PER CURIAM:
This case arises under chapter 13 of the new Bankruptcy Code, 11 U.S.C. §§ 1301-1330 (Supp. V 1981), and requires us to decide, first, whether a chapter 13 wage-earner plan may be confirmed despite the fact that it permits a fully secured creditor to be paid “outside of the plan,” second, whether a section 1301 stay may prevent a creditor from collecting accelerated legal (as opposed to contractual) interest from an accommodation maker, and third, whether the creditor’s twenty-five-percent attorney’s fee in this case should be calculated on the basis of the state-court judgment of indebtedness before or after the inclusion of postjudgment interest in the principal amount. For the reasons set out below, we affirm the district court’s resolution of all three issues in favor of the debtor.
This case began on November 8, 1979, when Friendly Finance Discount Corporation obtained in state court the following default judgment against the debtor, Zella Mae Bradley, and her two accommodation makers:
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, FRIENDLY FINANCE DISCOUNT CORPORATION, and against defendants, ZELLA MAE THOMAS BRADLEY, FLORIDA GREEN, and ROSA L. DIXON, in solido, in the full sum of FIVE THOUSAND ONE HUNDRED SEVENTY-EIGHT and 98/100 ($5178.98), with interest thereon at the rate under the Consumer Credit Law from date of judicial demand until December 5, 1982, and at 8% per annum thereafter, until paid, and together with 25% upon the aggregate of principal and interest due as attorney’s fees, and all costs hereof; less a credit of $650.00, October 22, 1979.
(typewritten parts of printed form emphasized). Unable to pay the judgment and threatened with an execution on a mortgage that she had given on various household effects to secure the debt, Bradley filed for relief under chapter 13 of the new Code on April 13, 1981. This filing automatically stayed any collection actions against Bradley, 11 U.S.C. § 362(a), or her two accommodation makers, 11 U.S.C. § 1301(a).
The United States Bankruptcy Court for the Western District of Louisiana granted final judgment in the case on August 11, 1981. Under the plan, as approved by the court, Bradley obligated herself to pay $125 per month, of which Friendly would receive $103.50, for forty-eight months. Bradley would also have $275 automatically deducted from her wages every month for approximately a year in order to complete repayments on a fully secured car loan that she had obtained from her employees’ credit union. These car payments, as the bankruptcy court phrased it, would be made “outside of the plan.” Although the parties agreed that Friendly’s claim was essentially unsecured- — Friendly’s mortgage on Bradley’s household effects was worth only $550 —Friendly insisted that the plan had been proposed in bad faith because it provided the credit union with a faster pay-out and because it provided for no increase in the moneys paid into the plan once the car payments ceased. The bankruptcy court rejected both of these arguments. The court also refused to permit Friendly to accelerate the legal interest charges imposed by the state court so that they could be collected immediately and in toto, as opposed to monthly as they fell due, from the two solvent accommodation makers. Finally, the bankruptcy court refused to include any legal interest charges in the basis for the calculation of Friendly’s twenty-five-percent attorney’s fee. The district court affirmed the judgment of the bankruptcy court in all respects.
On this appeal, Friendly continues to argue that the plan was proposed in bad faith, that all of the legal interest payments (in- *1411 eluding those that had not and have not yet accrued) should be immediately collectable from the two accommodation makers, and that legal interest should have been included in the basis for calculating the twenty-five-percent attorney’s fee. We address each of these three issues in turn.
We agree with the bankruptcy and district courts that the plan was proposed in good faith and should be confirmed. Section 1325 of the Code provides, in part, that “[t]he court shall confirm a plan if ... the plan has been proposed in good faith and not by any means forbidden by law.” 11 U.S.C. § 1325(a). Because Friendly is to be repaid essentially all of the principal of the amount loaned, it does not attack the plan on traditional good-faith grounds, namely, that the percentage of repayment is too low. See, e.g., Barnes v. Whelan, 689 F.2d 193, 197 (D.C.Cir.1982) (“courts divide sharply over the meaning of ... ‘good faith’ ... in the context of Chapter 13 plans which offer low-percentage repayments”). Rather, Friendly attacks the plan because it appears to discriminate between the credit union’s fully secured car loan, which is promptly repaid, and Friendly’s unsecured claim, which is not.[1] Friendly also attacks the provision for payments “outside of the plan.”
Friendly’s contention that a chapter 13 plan may not be approved if the debtor is to make some payments “outside of the plan” is wholly without merit. This circuit has already held that, depending upon the circumstances, “fully secured claims may in some instances be dealt with outside a chapter 13 plan.” Foster v. Heitkamp, 670 F.2d 478, 488 (5th Cir.1982). Bradley’s car loan was a fully secured claim, and we agree with the bankruptcy court that her election to treat it “outside of the plan” did not jeopardize approval of the plan.
Friendly’s contention that it was discriminated against and that the employees’ cred-
it union was unfairly favored is also without merit. Section 1322 of the Code (“Contents of plan”) plainly contemplates that secured claims, 11 U.S.C. § 1322(b)(2), will be placed in a different class or classes and treated differently than unsecured claims, 11 U.S.C. § 1322(b)(1). See also 11 U.S.C. § 1322(b)(10) (authorization for “any other appropriate provision not inconsistent with this title”). The debtor is afforded considerable flexibility: according to the District of Columbia Circuit, “[t]he court must examine the amounts proposed for each class in light of the debtor’s reasons for classification, and exercise sound discretion.” Barnes, supra, 689 F.2d at 202. We think that court approval of a scheme favoring a fully secured creditor over an unsecured one is a sound exercise of discretion under sections 1322 and 1325 of the Code. This kind of distinction is commonplace under chapter 11,11 U.S.C. § 1122; 5 Collier on Bankruptcy ¶ 1122.03(3) (15th ed. 1982) (“[a] plan of reorganization must separately classify ... unsecured claims . . . [and] secured claims”), and makes just as much sense under chapter 13. Section 1322(b), furthermore, expressly authorizes the creation of “a class or classes of unsecured claims,” and unsecured claims will normally be less unlike each other than unsecured from secured claims. The bankruptcy court therefore correctly determined that it made sense to favor the credit union’s fully secured car loan over Friendly’s unsecured claim.
We also reject Friendly’s further argument that the bankruptcy court’s refusal to provide for an increase in the payments into the plan after Bradley’s car payments stop constitutes an abuse of discretion so patent as to require reversal on this appeal. Bradley’s circumstances during the first year of the plan (during which she was also making car payments) were extremely *1412 strained. After the automatic deduction for the car payments, her monthly take-home pay and other income was $534.70. Out of that — and even allowing no money for clothing, medical and drug expenses, insurance, or recreation — she had to pay rent ($109.35), utilities ($120.00), food ($150.00), and transportation ($30.35). These deductions left her with exactly $125 per month, all of which she was required to pay into the plan. During the first year, there was consequently no margin for error, no room for contingencies such as accident or ill-health. In view of the tight financial circumstances the plan put Bradley in for that first year, the bankruptcy court was understandably reluctant to increase her obligations at the end of it. The district court, too, considered “the salary which [she] makes, [her] necessary living expenses, the number of children dependent upon [her] for support, and the fact that Friendly will have substantially all of its claim paid off under the plan,” and concluded that the bankruptcy court’s confirmation of the plan without an increase in payments after the first year should be affirmed.[2] We agree. The plan was eminently fair, was proposed in good faith, and was properly confirmed.
Friendly’s second major argument on this appeal concerns the bankruptcy court’s refusal to lift entirely and immediately the section 1301 stay of action against the two accommodation makers. Friendly’s judgment against Bradley permits it to collect $5178.98 “with interest thereon at the rate under the Consumer Credit Law from date of judicial demand until December 5, 1982, and at 8% per annum thereafter, until paid.” Bradley’s chapter 13 plan concededly does not provide for the payment of these legal interest charges, and section 1301(c) of the Code provides that the bankruptcy court shall lift a stay of action against codebtors if “the plan filed by the debtor proposes not to pay such claim ... [or] such creditor’s interest would be irreparably harmed by such stay.” The bankruptcy and district courts therefore correctly concluded that Friendly should be permitted to proceed against the two accommodation makers to the extent that the plan did not provide for the payment of legal interest. The question with which we are now presented is whether the stay should be lifted on a month-by-month basis, as the legal interest falls due, or whether all of the legal interest payments for the four-year period of the plan should be accelerated and collectable immediately.
In support of its argument that the legal interest payments should be accelerated, Friendly cites the following passage from the Senate report accompanying section 1301:
Under the terms of the agreement with the codebtor who is not in bankruptcy, the creditor has a right to collect all payments to the extent they are not made by the debtor at the time they are due. To the extent to which a chapter 13 plan does not propose to pay a creditor his claims, the creditor may obtain relief from the court from the automatic stay and collect such claims from the codebtor. Conversely, a codebtor obtains the benefit of any payments made to the creditor under the plan. If a debtor defaults on scheduled payments under the plan, then the codebtor would be liable for the remaining deficiency; otherwise, payments not made under the plan may never be *1413 made by the codebtor. The obligation of the codebtor to make the creditor whole at the time payments are due remains.
S.Rep. No. 989, 95th Cong., 2d Sess. 138 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5924; accord, H.R.Rep. No. 595, 95th Cong., 1st Sess. 121-23, 426 (1977), reprinted in 1978 U.S.Code Cong. & Ad. News 5963, 6082-84, 6381-82. We need not decide today whether in enacting chapter 13 Congress intended to permit a creditor merely to collect contractual interest payments as they fall due from an accommodation maker or whether Congress intended to permit contractually provided-for acceleration. Cf. 11 U.S.C. § 1124(2) (general prohibition against collection of “accelerated payment of ... claim[s] or interest after the occurrence of a default” in chapter 11 proceedings). Indeed, in the present case Friendly appears to have already secured the payment of accelerated contractual interest payments.[3] The present dispute does not, as the bankruptcy court pointed out, concern contractual interest payments. Comments in the legislative history concerning “the agreement with the codebtor” are therefore not controlling. They are, however, instructive.
The issue before us today is whether legal interest provided for in a state-court judgment may be accelerated by operation of law in a federal bankruptcy court. The bankruptcy and district courts held that it should not be accelerated, and we agree. Legal interest should be paid when it falls due, and not before. Cf. S.Rep. No. 989, supra, at 138, 1978 U.S.Code Cong. & Ad. News at 5924 (“[t]he obligation of the co-debtor to make the creditor whole at the time payments are due remains”) (emphasis added). The bankruptcy court therefore correctly refused to lift the stay preventing Friendly from proceeding against the accommodation makers to collect unaccrued legal interest. Accelerated payment of unaccrued interest is generally disfavored in bankruptcy law, see 11 U.S.C. § 1124(2), and we see no reason to depart from that general principle here.
Friendly’s last argument on this appeal concerns the refusal of the bankruptcy and district courts to include postjudgment interest in the basis for calculating Friendly’s twenty-five-percent attorney’s fee. Friendly contends that the printed judgment form providing for the collection of the fee “upon the aggregate of principal and interest due” includes postjudgment interest. The district court, affirming the bankruptcy court, construed the judgment as entitling Friendly to an attorney’s fee *1414 calculated on a basis of $5,178.98, which does not include postjudgment interest. We cannot conclude that the district court erred in so construing the state-court judgment.
The judgment of the district court affirming in all respects the judgment of the bankruptcy court is accordingly AFFIRMED.

. Before the calculation of legal interest and all of the attorney’s fees, Friendly is owed, according to the state-court judgment, $5178.98. Some $550 of that amount is secured. Counsel for Friendly conceded at oral argument before the bankruptcy court that the secured portion of the debt is “nominal.” Tr. at 5. The credit union’s car loan, on the other hand, appears to be fully secured: counsel for Bradley said that it was during the bankruptcy-court arguments, and counsel for Friendly did not contradict her. Tr. at 16-17.

. Section 1325(a)(6) of the Code requires the court to confirm a plan only if “the debtor'will be able to make all payments under the plan and to comply with the plan.” 11 U.S.C. § 1325(a)(6). In commenting upon this provision, Congress noted particularly:
As under current law, the debtor is given the exclusive rights to propose a repayment plan. Only the debtor knows his finances well enough and is sensitive enough to his primary obligation to support his family to know how much income he has available to pay his creditors, and thus to formulate a realistic plan.
The court will necessarily be required to consider the debtor’s ability to meet his primary obligation to support his dependents, because otherwise the plan is unlikely to succeed.
H.R.Rep. No. 595, 95th Cong., 1st Sess. 123-24 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6084-85 (footnote omitted).

. Although Friendly has not included the original note of indebtedness in the record, the $5178.98 in the November 8, 1979, state-court judgment evidently includes contractually accelerated interest payments — in Friendly’s words, “Principal and Interest through 12-5-81.” Unpaginated Record. The mortgage on Mrs. Bradley’s household effects, moreover, clearly includes an acceleration clause (“all sums of money remaining unpaid shall immediately become due and payable”). The state-court judgment was worded as it was because of the restrictions imposed by the Louisiana Consumer Credit Law. Bradley’s loan was apparently due to be retired on December 5, 1981, and apparently provided for the maximum rates of interest permitted by the four-part schedule in section 3519 of the Consumer Credit Law. Act No. 454, sec. 1, § 3519, 1972 La.Acts 1072, 1081-82 (current version at La. Rev.Stat.Ann. § 9:3519 (West Supp.1983)). See Record at 10 (Friendly’s work sheet calculating interest according to the graduated schedule in § 3519). The state-court judgment provided for Consumer Credit Law interest through December 5, 1982 (rather than 1981) because section 3522 of the CCL permitted the extension of contractual rates of interest to “one year after contractual maturity.” Act No. 454, sec. 1, § 3522, 1972 La.Acts 1072, 1084 (current version at La.Rev.Stat.Ann. § 9:3522 (West Supp.1983)). After the one-year period, as provided in the state-court judgment, the CCL mandated a reduction in interest charges to eight percent. Id. The question on this appeal is therefore not whether Friendly may be deprived of the “benefit of its contract;” rather, it is whether a state court’s legal interest may be accelerated by operation of law in a federal bankruptcy court.
We do not address the question whether a Louisiana court passing on the merits of the case would permit the collection of accelerated interest payments without the granting of a prepayment rebate. See La.Rev.Stat.Ann. §§ 3525, 3526, 3529 (West Supp.1983) (sections entitled “Maximum delinquency charges,” “Maximum deferral charges,” and “Rebate after acceleration of maturity”).