CITICORP PERSON–TO–PERSON FINANCIAL CENTER, INC., Plaintiff,

v.

George C. JORDAN, Ada K. Jordan, Defendants.

In the Matter of George D. JORDAN, Ada K. Jordan, Debtors.

Bankruptcy No. 3–81–01935.
Adv. No. 3–83–0193.

United States Bankruptcy Court, S.D. Ohio, W.D.

Sept. 8, 1983.

Lloyd D. Cohen, Dayton, Ohio, for debtors/defendants.

George W. Ledford, Englewood, Ohio, Trustee.

Edward J. Utz and Stephen Rodenbach, Cincinnati, Ohio, for plaintiff.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

George Calhoun Jordan and Ada Kendza Jordan, husband and wife, filed a joint petition for relief under Chapter 13 on 13 July 1981. An order confirming the proposed plan was duly entered on 17 August 1981.

This matter came on for trial on 29 August 1983 upon a complaint filed 16 March 1983 by Citicorp Person-To-Person Financial Center, Inc. (herein the Financial Center) against George C. Jordan and Ada K. Jordan alleging a mortgage balance due in the amount of $5,478.46 and seeking relief from the automatic stay "so as to permit Plaintiff to commence foreclosure of its real estate mortgage and for such other and further relief as is just and proper." The mortgage involved is an "Open-End Mortgage" in the amount of $3,180.00 dated November 26, 1975.

An answer not within Rule was filed in behalf of Defendants by leave of Court on 3 May 1983; and a pretrial conference resulted in a pretrial order on 21 July 1983.

The Plan provided for weekly payments to the Trustee in the amount of $47.00. Secured claims were to be paid first and unsecured claims paid after secured claims had been paid in full. The Plan projected total dividends to unsecured creditors over a period of 36 months of approximately 34 per cent of the total claims.

On 30 March 1982 Citicorp Homeowners, Inc. (herein Homeowners) was by agreed order granted leave to file a proof of claim because "through mistake and inadvertence" Advance Mortgage Company was scheduled as the creditor. The proof of claim as then filed was in the amount of $5,392.95 based upon a judgment rendered in the Montgomery County Common Pleas Court on July 17, 1981. Of the total amount, $895.08 was designed as "arrearage." The judgment was upon a promissory note secured by a real estate mortgage given to Advance Mortgage Corporation (and assigned to Homeowners) on the Debtors' residence, found to be a junior lien to a mortgage held by American Fletcher National Bank and Trust Company. The original promissory note provided for repayment of the amount of $8,880.00 in 60 consecutive monthly installments of $148.00 each, with a rebate of unearned finance charges to be computed under the "Rule of 78's" upon prepayment. The note does not specify the principal amount and the amount of the finance charges. The judgment entry in the state court without explanation grants to Homeowners "interest at the rate of 16.34% per annum, from January 6, 1981, until paid . . . ."

Upon report of the Trustee dated 25 March 1983 that the Debtors were delinquent in payments to the Trustee since November 2, 1982, in the amount of $1,907.00, an Order of Dismissal without prejudice was entered on 10 May 1983. Upon request of Debtors the Order of Dismissal was vacated before notice thereof to creditors, upon condition that a modification proposed by Debtors be implemented to increase monthly payments to the Trustee

"to $361.00 per month for the remainder of the Plan."

The Trustee has now filed another delinquency report showing that since the previous dismissal and the case reinstatement by the order of 6 June 1983 only $202.00 has been paid to him, and that only $343.00 has been paid to him since December, 1982.

Stipulations by the Debtors and evidence as adduced represented that no payments had been received on the indebtedness to the Financial Center since February, 1981, until the institution of the instant action. The documentary evidence, however, does not comport to this stipulation by Debtors. In fact, the amount due on the mortgage as pled by Plaintiff is very tenuous as a matter of law. There are seven Chapter 13 Trustee checks credited to the account since 1 July 1982 totalling $801.08 and one money order from Debtors for $148.00 on 15 June 1983.

The account record is not the only documentary evidence which causes concern. The prepaid interest charges are also not dealt with by the record. The instant action is not based upon the judgment by default in the state court. It is also noted as a factual matter that the mortgage delivery on November 26, 1975, was given as security for a promissory note in the amount of $3,180.00 and Item 6 of said mortgage specifically covenanted that future advances would be secured, but "provided that the aggregate unpaid principal indebtedness shall not exceed the original face amount of the aforesaid Promissory Note."

The Debtors apparently misrepresented in their schedules filed with their petition on 13 July 1981 that the obligation to "Advance Mortgage Company—Citicorps Homeowners" was covered by "Disability Ins." There is no evidence of any insurance company payments.

The real estate has a valuation ranging from $18,000.00 to $20,000.00. The total amount owing to American Fletcher National Bank & Trust Company, which holds the first and best mortgage lien, and to Homeowners, with a junior lien, totals approximately only $11,000.00, if the total amount now claimed by Plaintiff is allowable. The evidence adduced in this regard is not convincing.

According to a separate Loan Disclosure Statement the loan proceeds received by Debtors was $5,765.98 at the time of signing the promissory note on June 29, 1979. To this amount the lender added credit life insurance premiums of $270.84; title recording and appraisal charges of $88.75; "service or investigation charges" $217.29; and prepaid interest of $2,537.14. The total finance charge thus reached $2,754.43, with the "Annual Percentage Rate" quoted at 16.34%.

The account record shows charges for "Leg Fees" assessed in the amounts of $181.00 on 1 July 1981 and for $300.00 on 10 August 1981.

The Debtors are suffering from extreme economic and mental distress, a substantial share of which has been self-inflicted, because of the threatened loss of their home.

The case is exemplary of the complexity and confusion from simple procedural concepts going awry, and the need for policy refinements to refine such a simple judicial process as Chapter 13. The facts *instanter* involves a situation becoming too typical when payments are disbursed by debtors rather than coordinated through the continuous control of the Chapter 13 Trustee, often termed "outside the Plan." The looseness of the semantics of this term is no doubt the primary source of misconceptions and misdirections in the administration of what should be a simple administrative procedure, more accounting than judicial. In short, unnecessary complexities being imposed upon the Chapter 13 process are creating unintended and wasteful judicial involvement.

■ The court has addressed the problem of adequate and necessary control of a Chapter 13 estate on numerous previous occasions. See for instance *Matter of Berry* (1980), 5 B.R. 515, 6 B.C.D. 649, 2 C.B.C.2d 663. As previously cautioned a court must preserve undivided control over all of the

assets of a case. Although it may on occasion be in the best interests of both efficiency and proficiency to authorize a debtor to disburse funds to a residential real estate mortgagee, the use of the semantics "outside" the Plan is a misnomer. If such debtor disbursements interfere with the administration of the estate, simple logic dictates that suitable control be asserted by the court for the sake of all interested parties, including a debtor. Regardless of who distributes the estate funds, payments contemplated by a proposed plan are "inside" the Plan as confirmed.

■ If direct payments of current residential mortgage payments do not impair the payments to the trustee and distribution to other creditors and the plan can be complied with, then a debtor should be permitted to act as the disbursing agent under a proposed plan in conformance with the requirements of § 1325(a) of the Code.

The facts *instanter* demonstrate that insufficient trustee control has precipitated continual administrative crises, including failures in compliance with the plan and order of confirmation to implement payments both to the trustee and to creditors. Failure in either respect constitutes an abuse of the process and must be remedied to provide adequate protection to all conflicting interests.

Disbursements from the estate by debtors directly to residence real estate mortgagees is in many cases a feasible procedure device only if there are no serious prefiling arrearages. The situation is somewhat different if there are no serious arrearages at the time of instituting the Chapter 13 process. Because of the inherent administrative delays in distribution by a Chapter 13 Trustee, particularly the initial payments after confirmation of the plan, receipts by mortgagees are necessarily delayed. Such late or erratic receipts of monthly payments in these times of programmed computer bookkeeping may jeopardize a wholesome relationship between real estate mortgage lender and borrower, which will continue normally for years after termination of a Chapter 13 case.

■ Pursuing the rationale and remedies discussed in the *Berry* case, the following postconfirmation control must be implemented in the case *sub judice* and will be considered in all cases henceforth submitted for confirmation, namely:

(1) In all cases wherein the Plan contemplates direct distribution to a creditor or creditors by the debtor, all prepetition arrearages must be current. As to arrearages dealt with by the debtor's Plan, the procedures adopted in *Matter of Berry* will be employed until the arrearages have been made current. In short, the trustee must handle all estate funds for distribution conformably to the plan and then return excess funds to the debtor; or, all distributions to all debtors' creditors must be made by the trustee as part of the plan ("inside the Plan").

(2) In cases wherein the court has authorized direct payments by the debtors to residential real estate mortgagees, any reported defaults by the Trustee will result in automatic implementation of the above administrative procedure unless the debtor has previously exercised case dismissal or conversion rights.

■ The complaint of Plaintiff Citicorp Person-To-Person Financial Center, Inc., must be denied because there is no evidence to demonstrate it has any legal interest in the promissory note and mortgage admitted into evidence by stipulation of the parties. The evidence establishes only that Citicorp Homeowners, Inc., owns the mortgage by assignment of 20 May 1981 from the original mortgagee (Advance Mortgage Corporation). There is no evidence of a subsequent assignment to Plaintiff. Furthermore, there is sufficient temporary protection to both mortgagees from the Debtors' equity in the real estate collateral. The junior lien of Homeowners is not only adequately now protected; but, also, no distribution can be made by the Trustee until the Debtors and mortgagee can establish by agreement or otherwise the allowable total balance due and owing on the claim and the portion thereof which is secured by the mortgage lien to be paid before distribution to unsecured claimants.

Applying these administrative guidelines to the facts and problems *instanter* and for the purpose of providing adequate protection to both real estate lienholders, it is

ORDERED, ADJUDGED AND DECREED, that the case will be forthwith dismissed as requested by the Trustee for failure to comply with the previous court orders and payments to the Trustee, unless the Debtors within two weeks file a second modified Plan which is feasible and which funds the payments by the Trustee in the best interests of all creditors, including real estate mortgagees. It is further,

ORDERED, ADJUDGED AND DECREED, that the Debtors' equity over liens in the residential real estate of at least $10,000.00 constitutes adequate protection to the mortgagees as security for the value of property to be distributed under the Plan, including arrearages to be cured conformably to 11 U.S.C. § 1322. It is further

ORDERED, ADJUDGED AND DECREED that a modified plan confirmed in compliance with the preceding orders and the requirements of the above decision would constitute adequate protection to the real estate mortgagees.