**In re Stephen Shields PARDUE, Suzanne T. Pardue, Debtors.**

**Bankruptcy No. 91–11252.**

United States Bankruptcy Court, E.D. Texas, Beaumont Division.

Aug. 5, 1992.

Robert E. Barron, Nederland, Tex., for debtors.

Peggy Koppa, Benckenstein, Oxford, Radford & Johnson, Beaumont, Tex., for First Interstate Bank of Texas, N.A.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before this Court the Motion of First Interstate Bank of Texas, N.A., for Relief from the Co–Debtor Stay pursuant to regular setting in Beaumont, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 and disposes of all issues before the Court.

### FACTUAL BACKGROUND

Suzanne T. Pardue, hereinafter referred to as ("Debtor"), together with her husband, Stephen Shields Pardue, filed for relief under Chapter 13 of the Bankruptcy Code on November 8, 1991. Prior to filing for relief, Debtor incurred consumer debt by executing a simple interest note, hereinafter referred to as ("Note"), in favor of First Interstate Bank of Texas, N.A., hereinafter referred to as ("Bank"). Contemporaneous with the execution of this Note, Debtor and Fred Thornton (her father) executed a personal security agreement granting to Bank a lien on a hundred shares of stock held in the name of Fred Thornton, hereinafter referred to as ("Thornton").

Soon after Debtor sought relief under Chapter 13, Bank filed a proof of claim in the amount of $3,138.33. This amount represented the principal balance remaining on

the Note. No claim was made for interest or attorney's fees, both of which were provided for by the Note. Debtor's plan proposed to pay one hundred (100%) percent of Bank's claim as filed; however, Bank objected to the confirmation of Debtor's plan. In pertinent part, Bank contended that since the value of the Thornton stock exceeded the principal balance due on the note, Bank was entitled to interest as an oversecured creditor. Ultimately, the plan was confirmed over Bank's objection. The plan provides for Bank's treatment as an unsecured creditor. Due to Bank's unsecured status, no provision was made for Bank's recovery of interest or attorney's fees.

Bank has now filed this Motion for Relief from the Co–Debtor Stay, pursuant to 11 U.S.C.A. § 1301 (West 1979 and Supp.1992) asserting that the express terms in the Note and security agreement entitle them to interest and in case of default, attorney's fees. As of the date of this hearing, accelerated interest of $1,149.82 and attorney's fees of $2,992.50 are due under the terms of the note. To the extent that Bank is deprived of the benefit of its bargain through the force of Debtor's bankruptcy, Bank maintains it is entitled to seek recovery directly from the Co–Debtor of any amounts not to be paid through the plan.[1] Debtor contends that it is providing fully for the payment of Bank's claim and therefore Bank is not entitled to relief from the stay to pursue the Co–Debtor, Thornton. The matter was taken under advisement.

## DISCUSSION OF LAW

Almost every discussion of § 1301(c)(2) resorts to a review of the legislative history underlying its enactment:

> [§ 1301(c)(2) ] is designed to protect a Chapter 13 debtor from indirect pressure from a creditor exerted through his friends or relatives to favor or prefer that creditor. A creditor is often able to obtain a co-signer on a loan when the loan is extended. The Federal Trade Commission, in its investigation of the consumer finance industry, and the Bankruptcy Commission found that most often the co-signer is not aware of the consequences of his acting as a co-signer for the debtor. The contract is most frequently a contract of adhesion between the lender and the debtor.... A creditor with a co-signer on a note is often able to use the threat of collection from the co-signer as leverage to obtain preferential treatment from the debtor. Most often, co-signers are relatives, friends, or co-workers of the debtor, who have signed as a favor to the debtor without a full understanding of their ultimate liability on the debt. The moral pressure brought to bear on the debtor to protect his family or friends gives the creditor a significant advantage over other creditors in a way that is not related to legitimate financial considerations.... [However, § 1301], also provides for relief from the stay in certain circumstances in order to protect the creditor's rights. If the debtor proposes not to pay a portion of the debt under his Chapter 13 individual repayment plan, then the stay is lifted to that extent. **The creditor is protected to the full amount of his claim, including post-petition interests, costs, and attorney's fees, if the contract so provides.** Thus, if the debtor proposes to pay only $70.00 of a $100.00 debt on which there is a co-signer, the creditor must wait to receive the $70.00 from the debtor under the plan, but may move against the co-debtor for the remaining $30.00 and for any additional interest fees, or costs for which the debtor is liable. The stay does not prevent the creditor from receiving full payment, including any costs and inter-

---

**1.** (c) On request of a party in interest and after notice and a hearing, the court shall grant relief from the [co-debtor stay] with respect to a creditor, to the extent that—

    (2) the plan filed by the debtor proposes not to pay such claim ...

11 U.S.C.A. § 1301(c)(2) (West 1979 and Supp. 1992).

est, of his claim. It does not affect his substantial rights. It merely requires him to wait along with all other creditors for that portion of the debt that the debtor will repay under the plan.

House Report No. 95–595, 95th Cong. 1st Sess. (1977) p. 121–122, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6082–6083 *quoted in International Harvester Emp. Credit Union v. Daniel*, 13 B.R. 555, 557 (Bankr.S.D.Ohio 1981) (emphasis added); *see also Harris v. Fort Oglethorpe State Bank*, 21 B.R. 1019, 1021 (E.D.Tenn.1982); *In re Johnson*, 12 B.R. 894, 895 (Bankr. D.Maine 1981). Similarly, the Fifth Circuit relied on the Senate Report accompanying § 1301:

Under the terms of the agreement with the co-debtor who is not in bankruptcy, the creditor has a right to collect all payments to the extent they are not made by the debtor at the time they are due. To the extent to which a chapter 13 plan does not propose to pay a creditor his claims, the creditor may obtain relief from the court from the automatic stay and collect such claims from the co-debtor. Conversely, a co-debtor obtains the benefit of any payments made to the creditor under the plan. If a debtor defaults on scheduled payments under the plan, then the co-debtor will be liable for the remaining deficiency; otherwise payments not made under the plan may never be made by the co-debtor. The obligation of the co-debtor to make the creditor whole at the time payments are due remains.

S.Rep. No. 989, 95th Cong., 2nd Sess. 138, U.S.Code Cong. & Admin.News 1978, p. 5924 (1978) *quoted in Matter of Bradley*, 705 F.2d 1409, 1412–1413 (5th Cir.1983).

■■■ Clearly, the primary goal of the co-debtor stay is to allow the debtor to fully provide for the payment of a consumer debt, on which a co-debtor is liable, according to the debt's prepetition terms or as modified by the plan. To the extent the debtor so provides, any co-debtors on the debt are protected from collection attempts by a creditor. However, whether the debt is secured or unsecured the goal has never been to deprive the creditor of the benefit of his bargain. As demonstrated by numerous cases, to the extent the plan fails to provide for payment in full of a debt, a creditor is entitled to seek relief from the court to pursue the co-debtor for the remainder. *See Matter of Bradley*, 705 F.2d 1409 (5th Cir.1983) (stay lifted against co-debtors to extent of debtor's failure to provide for the payment of judgment interest); *In re Garrett*, 36 B.R. 432 (Bankr. M.D.Tenn.1984) (stay lifted against co-debtors to extent of debtor's failure to provide for full payment of principal amount of debt); *In re Sandifer*, 34 B.R. 507 (Bankr. W.D.La.1983) (stay lifted against co-debtors to extent of debtor's failure to provide for full payment of unmatured interest); *In re Johnson*, 12 B.R. 894 (Bankr.D.Maine 1981) (principal and unearned interest); *In re Henson*, 12 B.R. 82 (Bankr.S.D.Ohio 1981) (unmatured interest); *Matter of Didomizio*, 11 B.R. 357 (Bankr.D.Conn.1981) (post-petition interest).

■■■ Debtor argues that her provision for one hundred (100%) percent payment on Bank's proof of claim in the amount of $3,138.33 somehow estops Bank from attempting to collect monetary amounts in excess of the proof of claim as allowed. The Debtor's argument is misplaced. Vis-a-vis the Co–Debtor, the Bank's rights to collect its debt is not, in spite of Debtor's bankruptcy, substantively affected. As stated by the court in *Matter of Brahm*, 7 B.R. 253, 255 (Bankr.S.D.Ohio 1980) "[the co-debtor stay] requires a creditor with a co-signer to participate with other creditors as to time, but does not invalidate the obligation." In other words, in order to protect a co-debtor, a debtor is not necessarily required to pay a debt according to the prepetition terms governing timing of the payments and the payment amount but to the extent that a debt is not paid in its entirety through the debtor's plan, the co–debtor's obligation on the difference remains because the debtor cannot unilaterally extinguish the co–debtor's underlying obligation. *See* 11 U.S.C. § 524(e).

■■■ While one might argue that it would have been more prudent for Bank to list

interest and attorney's fees in its proof of claim, the Court is convinced that in the context of a co-debtor debt the ultimate responsibility for scheduling the debt rests with the debtor. Nothing requires a creditor to seek payment of a debt on which both a debtor and co-debtor are liable solely from the debtor in bankruptcy. In the absence of a proof of claim filed by either the creditor or the debtor the creditor would be entitled to relief from the stay to pursue any co-debtors liable on the debt unrestricted. Therefore, if the debtor wishes to protect his co-debtors such debtor must take the responsibility for fully paying the debt for which the co-debtor is also responsible.

■ In sum, the Court finds that while not evidenced by Bank's proof of claim, the Note and security agreement binding Debtor and Co–Debtor provide for the payment of interest and attorney's fees. Debtor's plan has made no provision for the payment of these latter two items. Therefore, Bank is entitled to relief from the automatic stay to pursue collection against Co–Debtor Thornton to the extent it is not paid through the plan for principal, interest and attorney's fees.

■ Bank also asked this Court to determine that it was entitled to attorney fees in the amount of $2,992.50 as provided in the note. The Bank's claim for attorney fees and interest is premised on their argument that the stock securing the loan is valued at $10,000.00 and they are therefore oversecured creditors entitled to interest and attorney fees. This Court holds that, as between Bank and Debtor, the Bank is not oversecured. In fact, they are not secured at all. The collateral is not a part of the bankruptcy estate but is the property of the Co–Debtor. The only time it would be appropriate for the bankruptcy court to determine interest and attorney fees when a creditor is oversecured is when the collateral is part of the estate. The bankruptcy court then has to apportion that excess value between the oversecured creditor and the remainder of the claimants to the estate's assets. That consideration is not present in this case and this Court finds

that it is appropriate to leave the determination of the measure of attorney fees and interest owed by the Co–Debtor, if any, to the forum in which the Bank now asserts its claim against the Co–Debtor.