**In re Judy HAUGLAND, Debtor.**

**Bankruptcy No. 96–32553.**

United States Bankruptcy Court,
D. New Jersey.

Aug. 13, 1996.

Neil M. Pomper, Freehold, New Jersey, for Debtor Judy Haugland.

Francis J. McGovern, Jr., Stark & Stark, P.C., Princeton, New Jersey, for Towne Pointe Condominium Association, Inc.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### I. *PROCEDURAL HISTORY*

This matter comes before the court upon the motion of Judy Haugland (the "Debtor") to compel the creditor, Towne Pointe Condominium Association, Inc. (the "Association"), to remove a levy on a bank account jointly owned by Debtor and her spouse, Paul Haugland (the "Co-obligor") (Debtor and Paul Haugland are hereinafter cumulatively referred to as "Hauglands"). The Association filed opposition and cross-moved to determine, *inter alia,* that Debtor's obligations to the Association are nondischargeable and to convert or to dismiss the case. At a hearing held April 30, 1996, the court ruled that one-half of the levied sum should be released to Debtor. The court reserved decision regarding the remaining half to determine whether the codebtor stay provided in § 1301 of the Bankruptcy Code prevents the Association from obtaining Co-obligor's half of the levied sum. The court also reserved on the Association's dismissal cross-motion. The court permitted the parties to file supplemental papers. The Association and Debtor responded with a brief and a letter to the court, dated May 25, 1996, and June 14, 1996, respectively. The Association submitted an additional letter brief on June 18, 1996.

This court has jurisdiction pursuant to 28 U.S.C. § 1334 as this matter arises under 11 U.S.C. § 1301. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

### II. *FACTS*

Debtor and Co-obligor own a condominium unit located at 233 Paddington Court in Manalapan, New Jersey (the "condominium"). The Association administers the condominium and exists by virtue of both the New Jersey Condominium Act, N.J.S.A. 46:8B–1 *et seq.,* and a Master Deed (the "Deed") recorded on May 7, 1990, in the Office of the Clerk of Monmouth County. The by-laws of the Deed require Debtor and Co-obligor to pay various fees to the Association in a timely manner. Debtor and Co-obligor failed to pay these fees timely. In response, the Association filed a complaint against the Hauglands in the Superior Court of New Jersey, Monmouth County, Special Civil Part, captioned: *Towne Pointe Condominium Association, Inc. v. Paul O. Haugland and Judy Haugland,* Docket No. DC–003519–95. On June 20, 1995, the Superior Court entered a judgment in favor of the Association for $4,474.03. Subsequently, the Association obtained a levy upon the Hauglands' joint bank account at First Fidelity Bank, N.A. on March 20, 1996. The levied sum equaled the amount the Hauglands had on deposit at that time—$2,699.00.

On March 29, 1996, Debtor filed a petition for relief under Chapter 13 of Title 11 of the United States Code. Debtor listed the Association as a secured creditor in the schedules in her petition. Co-obligor did not file for bankruptcy. Debtor moved for an order to: (1) compel the Association to remove and vacate the levy; and (2) award sanctions and reasonable attorney's fees. On April 15, 1996, the Association filed an opposition and concurrently made a cross-motion to: (1) convert the case to Chapter 7; (2) determine that Debtor's obligations to the Association from December 27, 1994[1] to the present are nondischargeable; and/or (3) dismiss the petition. At a hearing on these motions on April 30, 1996, this court ruled that the levy on Debtor's half of the funds should be lifted and the funds released to Debtor based on impairment of exemption theory. *See* 11 U.S.C. § 522(f). After the hearing, both par-

---

1. This is the filing date of Debtor's first bankruptcy petition which she filed jointly with her husband, Co-obligor in the present action. The first petition, Docket No. 94–38031, was dismissed on July 11, 1995.

ties submitted forms of order, however, no order has yet been entered. This court reserved decision as to the remaining one-half of the levied sum as well as to the cross-motion for dismissal.

Subsequently, counsel submitted supplemental papers. In its brief dated May 25, 1996, the Association contends that Debtor has no interest in the remaining half of the levied sum belonging to Co-obligor; and, therefore, no impairment of Debtor's exemption exists. Thus, the Association claimed, Co-obligor's half of the levied sum should be released to the Association. The Association also claimed that the Hauglands' obligations to the Association were not consumer debts, therefore, § 1301 of the Code would not bar the Association from obtaining Co-obligor's half of the funds. In Debtor's counsel's letter dated June 14, 1996, Debtor contends that she does have an interest in the funds and that they are exempt because they were claimed as an exempt asset of Debtor alone in her petition. In its letter dated June 18, 1996, the Association also contends that Debtor's petition must be dismissed because Debtor filed in bad faith. In support of its contention, the Association stated that Debtor failed to make any payments to the Chapter 13 Trustee or to the Association pursuant to her Chapter 13 plan.

## III. *DISCUSSION*

In this case, the material facts are undisputed. Two unresolved issues remain. The first issue is one of first impression in this circuit: whether debts incurred by a non-bankruptcy filing codebtor for condominium association fees are "consumer debts" for the purpose of the Bankruptcy Code's § 1301 codebtor stay? If the Hauglands' obligations to the Association are consumer debts, then the codebtor stay applies and the Association may not obtain Co-obligor's half of the levied sum. If they are not, however, the Association would be free to obtain Co-obligor's half of the levied sum. Because of the dispositive nature of § 1301 on the issue of Co-obligor's half of the funds, both Debtor's and the Association's arguments regarding the impairment of exemption theory need not be addressed. The second and dispositive issue in this case is whether Debtor's bankruptcy petition should be dismissed.

This court holds that the Hauglands' obligation to the Association is a consumer debt because the obligations comport with the definition of consumer debt provided in § 101(8) of the Bankruptcy Code. Also, the underlying purpose of the § 1301 codebtor stay calls for this holding as evidenced by its legislative history. Therefore, the codebtor stay should apply to bar any actions by the Association against Co-obligor. However, because Debtor failed to make payments under her plan, the Association's cross-motion to dismiss Debtor's petition must be granted pursuant to § 1307(c) of the Bankruptcy Code.

### A. *Codebtor Stay*

Section 1301 states in pertinent part:
§ 1301. **Stay of action against codebtor.** (a) Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a *consumer debt* of the debtor from any individual that is liable on such debt with the debtor …

11 U.S.C. § 1301(a) (emphasis added).

Section 101(8) defines "consumer debt" as "debt incurred primarily for a personal, family, or *household* purpose." 11 U.S.C. § 101(8) (emphasis added). Besides the statutory definition above, little judicial interpretation exists with regard to consumer debt for the purpose of § 1301. In *In re Motes,* 166 B.R. 147 (E.D.Mo.1994), the court held that a debt incurred for the purchase of a mobile home constituted a consumer debt. *Id.* at 148. In that case, the filing of a Chapter 13 petition by the debtor invoked a codebtor stay of action against the debtor's non-filing wife's interest on the home. *Id.* In *In re Whitelock,* 122 B.R. 582 (D.Utah 1990), the court held that a debt on a home, which was a renegotiation of a prior loan incurred by Chapter 13 debtors to pay off debt to Internal Revenue Service, and secured by real property by one debtor's mother, *was a consumer debt for Chapter 13 purposes. Id.* at 586–587 (emphasis added). The *Whitelock* court further stated that the statutory scheme so clearly contemplates that consumer debt include debt secured by real property that no other conclusion re-

mains. *Id.* at 587–588 (citing *In re Kelly,* 841 F.2d 908 (9th Cir.1988), *aff'g* 57 B.R. 536 (Bankr.D.Ariz.1986)).

*Motes* and *Whitelock* are analogous to the present case. Both courts interpreted the § 101(8) definition of consumer debt to include certain types of liens against real property. *See In re Motes,* 166 B.R. at 148; *In re Whitelock,* 122 B.R. at 586–587 (numerous cases agreeing with this proposition cited herein); *but see In re Circle Five, Inc.,* 75 B.R. 686 (Bankr.D.Idaho 1987); *In re Green,* 70 B.R. 164, 166 (Bankr.W.D.Ark.1986); *In re Walton,* 69 B.R. 150 (E.D.Mo.1986). The two cases cited by the Association in its brief (which held that tax liability to the Internal Revenue Service for income tax were not consumer debts under 11 U.S.C. § 101(8)) are factually distinguishable from the present action because they deal with tax liability which is not at issue here. *See In re Gault,* 136 B.R. 736, 738 (Bankr.E.D.Tenn.1991); and *In re Pressimone,* 39 B.R. 240, 244–245 (N.D.N.Y.1984).

This court finds that the debt in the present action to the Association for condominium association fees is a consumer debt. The language of the Deed, itself, provides: "Each assessment and all fines and other charges *shall be a continuing lien upon the Unit against which they were made . . . .*" Article VI, § 6.02 of the Master Deed (emphasis added). This excerpt shows that the debt incurred by the Hauglands is secured by real property—the condominium—just as the debts in *Motes* and *Whitelock* were secured by real property. *See supra* at 127–28. Furthermore, the court finds the term "household," contained in 11 U.S.C. § 101(8), is sufficiently broad to include condominium association fees which serve to enhance the condominium's appearance, function and utility.[2]

■ In addition to the authority provided by the definition of consumer debt contained in § 101(8), the legislative history of § 1301 also supports the conclusion that actions to collect condominium fees are stayed. The avowed purpose of § 1301's stay of actions against the codebtor is to "protect a Chapter 13 debtor from indirect pressure from a

creditor exerted through her friends or relatives." *In re Motes,* 166 B.R. at 148 (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 121 (1977)); *see also In re Pardue,* 143 B.R. 434, 436–438 (Bankr.E.D.Tex.1992) (discussing at length the legislative history and Congressional intent underlying the passage of § 1301). In *In re Pardue,* the court explained that most frequently § 1301 codebtor contracts are contracts of adhesion favoring the creditor. 143 B.R. at 436. The court further reasoned that § 1301 does not extinguish a creditor's claim; it merely requires him to wait along with all other creditors for that portion of the debt that the debtor will repay under the plan. *Id.* at 436–437.

Furthermore, the court in *Maritime Electric Company, Inc. v. United Jersey Bank,* 959 F.2d 1194, 1203–1204 (3d Cir.1991), stated some frequently cited and well-established language which provides further insight into the importance of the stay in the bankruptcy system. The court explained that the automatic stay, which has a broad scope, serves several purposes. *Id.* First, it gives a bankrupt a breathing spell from creditors by stopping all collection efforts, permitting a bankrupt to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures which drove her into bankruptcy. *Id.* Second, the stay protects creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors. *Id.*

In this case, by obtaining a civil judgment and a levy against the Hauglands' account and pursuing the funds after the filing of Debtor's petition, the Association is engaged in the type of situation that Congress intended to prevent. The actions by the Association exemplify the activity, mentioned above, both of a creditor exerting pressure on a codebtor spouse (Co-obligor) and of a creditor attempting unilaterally, in self-interest, to obtain payment from debtor to the detriment of other creditors (First Fidelity Bank, N.A. (first mortgagee/secured creditor)). Furthermore, Debtor was not truly afforded the proper "breathing spell" intended to result from the stay because Debtor never was able to reach the levied funds, her entire savings,

---

2. Article VI, § 6.02 of the Master Deed provides that the Association fees shall be applied to main- tain the condominium and the "common elements."

during the period of the stay. Therefore, this court holds that Debtor deserved either (1) a codebtor stay, as a matter of law, causing the release of the levied funds, or, (2) ample opportunity and time to muster her required payments pursuant to her Chapter 13 plan—provided that Debtor complies with all of the requirements imposed by the Bankruptcy Code.

### B. *Dismissal*

■ Section 1307(c) states in pertinent part:

§ 1307. **Conversion or dismissal**

(c) ... on request of a party in interest or the United States trustee and after notice and a hearing, the court ... may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28 [28 U.S.C. §§ 1911 *et seq.*]; ...

(4) failure to commence making timely payments under section 1326 of this title; ....

11 U.S.C. § 1307(c).

Debtor filed her petition on March 29, 1996. In a letter brief dated June 18, 1996, the Association pointed out that Debtor, as of that date, had not made any payments to either the Trustee or to the Association pursuant to her Chapter 13 plan. To date, Debtor has provided no reason to believe that any payments have been made or will be made. Debtor's failure to comply with the Bankruptcy Code's provisions requiring timely payments under her Chapter 13 plan requires that the Association's cross-motion for dismissal be granted. *See* 11 U.S.C. § 1307(c)(4).

### IV. *CONCLUSION*

For all of the above reasons, this court finds that condominium association fees are consumer debts within the definition provided in § 101(8) of the Bankruptcy Code. Therefore, actions to collect condominium fees are generally stayed pursuant to 11 U.S.C. § 1301. Based upon the undisputed facts, however, the Association's cross-motion for dismissal must be granted pursuant to

§ 1307(c) of the Code. Since the case is dismissed, debtor is no longer entitled to the § 1301 stay and the Association is entitled to the levied sum in its entirety. An order of dismissal accompanies this opinion.