**In re Leander CITROWSKE and Rose Mary Citrowske, Debtors.**

**Bankruptcy No. 4–86–3648.**

United States Bankruptcy Court, D. Minnesota.

May 1, 1987.

Wendy Alison Nora, Minneapolis, Minn., for debtors.

Gary W. Koch, New Ulm, Minn., for Federal Land Bank and Production Credit Assn.

Elissa G. Mautner, Asst. U.S. Atty., Minneapolis, Minn., for Farmers Home Administration and Commodity Credit Assn.

Mark C. Halverson, Mankato, Minn., Trustee, in pro. per.

## ORDER DENYING CONFIRMATION OF PLAN

ROBERT J. KRESSEL, Chief Judge.

This case came on for hearing to consider confirmation of the debtors' Chapter 12 plan. Wendy Alison Nora appeared on behalf of the debtors. Mark C. Halvorson, the trustee, appeared *in propria persona.* Elissa G. Mautner appeared on behalf of the Farmers Home Administration and the Commodity Credit Corporation, and Gary W. Koch appeared on behalf of the Federal Land Bank of St. Paul and the Production Credit Association of Madison.

The debtors filed this Chapter 12 case on December 5, 1986. They filed a plan on March 5, 1987. A hearing was set for April 3, 1987, to consider confirmation of that plan. On March 26, 1987, the debtors withdrew the March 5th plan, the confirmation hearing was cancelled and the debtors filed a new plan. Objections to confirmation of the new plan have been filed by the United States Trustee, the trustee, the Farmers Home Administration, the Commodity Credit Corporation, the Federal Land Bank of St. Paul, and the Production Credit Association of Madison.

The following objections are sustained:

### 1. Disbursing Agent

■ The United States Trustee, the trustee, the Federal Land Bank and PCA have all objected to the provision in the debtors' plan that the United States Trustee shall serve as "disbursing agent". Chapter 12 has no provision for nor need for a disbursing agent. There is a trustee for each Chapter 12 case, either separately appointed by the United States Trustee under § 1202(a) or a standing trustee appointed by the United States Trustee under 28 U.S.C. § 586(b). The debtors' plan must provide for submission of all or some portion of their income to the supervision and control of the trustee. § 1222(a)(1). It is the trustee's duty under § 1226(a) to distribute payments under the plan. Thus, there is no need for a disbursing agent. In any case the United States Trustee, as an officer of the United States Department of Justice, is responsible for supervising the administration of bankruptcy cases and trustees and is not in a position to act as a disbursing agent.

### 2. Trustee's Fees

■ The United States Trustee for this district has exercised his discretion to appoint under 28 U.S.C. § 586(b) standing trustees for Chapter 12 cases. The Attorney General has the responsibility under 28 U.S.C. § 586(e)(1)(B)(ii) to set the percentage fee for standing trustees. He has set the fee in Minnesota at 10% of payments under plans which do not exceed $450,000. Under 28 U.S.C. § 586(e)(2), the trustee collects the specified percentage fee from payments under the plan. The debtors urge me to use my "equitable powers" to reduce in this case the fee set by the Attorney General. Whatever my equitable powers may be, they certainly do not authorize me to arrogate to myself the authority that Congress has vested in the Attorney General. Congress has provided in § 326(b) for the court to allow within certain parameters reasonable compensation for individual Chapter 12 trustees appointed under § 1202(a). Likewise in a district which is

not yet incorporated into the United States Trustee system, the court retains the responsibility of appointing and setting the fees of a standing trustee. However in a United States Trustee district where a standing trustee has been appointed by the United States Trustee, the court is without authority to determine or in any way adjust the compensation or reimbursement of expenses of that standing trustee.

### 3. Timing of Payments

■ Several of the parties have raised various objections regarding the timing of payments under the plan. The plan is ambiguous regarding when the trustee is required to make payments to which creditors and administrative expense claimants. Monthly payments are specified for certain creditors and other creditors are to receive annual payments, but there is no specified time of year when those payments are to be made. Likewise, there is no indication of a schedule for paying the administrative expense claims. It is incumbent on the debtors to provide a schedule [1] of payments by the debtors to the trustee and by the trustee to creditors which is clear and meets the statutory requirements.

### 4. Payments "Outside the Plan"

The United States Trustee and the trustee have objected to certain payments being made outside the plan. "Outside the plan" is a phrase that has crept into the bankruptcy vernacular which is not only misleading but also falsely implies some substantive meaning that it does not actually have. A debtor's plan must specify how each creditor's claim will be treated and paid. Since all payments must be made according to the terms of the plan, there is really no such thing as payments being made outside the plan. What the phrase "outside the plan" has come to mean is that the debtors will make the payments to a creditor directly rather than having such payments made by the trustee, presumably thereby avoiding payment of the trustee's percentage fee. With the possible excep-

---

**1.** A schedule does not necessarily require specific dates, but does require enough detail so interested parties can tell if the debtors and the trustee are complying with the plan.

tion of unaltered regular contractual payments on long term debts, which are much the same as other regular current monthly expenses, all payments to creditors or administrative expense claimants are paid under the plan and thus subject to the trustee's percentage fee. This is so even if the plan provides that the payment will actually be made by the debtors or from some other source. Since there is no financial advantage to the debtors distributing direct payments under the plan, there is little reason not to require all income dedicated for plan payments to be paid to the trustee to be distributed pursuant to the plan.

### 5. Classification of CCC Claims

■ CCC has objected to the fact that its claim secured by the 1983 corn is not provided for and that its other two claims are lumped together in one class. As noted, a plan must provide for payment of all claims. The problem of lumping claims together is clear in a Chapter 11 case, since § 1122 requires claims in the same class to be substantially similar to each other. The result should be the same in a Chapter 12 case under § 1222(b)(1). While § 1122(a) is intended in part to address a problem of possible gerrymandering for voting purposes which is not a concern in Chapter 12, clarity also requires that different sorts of claims be in different classes. Thus notwithstanding the fact that the CCC may be the creditor in both transactions, secured claims are virtually never substantially similar and should be in separate classes for clarity's sake if nothing else.

### 6. Retention of Liens

■ The Federal Land Bank and PCA object to the plan not providing that they retain their liens to secure their secured claims. Section 1225(a)(5) provides that if a secured creditor has not accepted the plan and the debtor is not surrendering the creditor's collateral, the plan must provide that the creditor retain its liens and receive the present value of its allowed secured claim. Federal Land Bank and PCA have not accepted the plan and the debtor is not surrendering its collateral. Therefore, the plan must provide for them to retain their liens.

### 7. Classification of Unsecured Creditors

■ The Federal Land Bank and the PCA object to the fact that the plan treats each creditor's secured and unsecured claim in the same class. A secured claim is not substantially similar to an unsecured claim and must be treated in a separate class. The debtors' plan does contain a class for unsecured creditors but states that there are no unsecured claims. Factually that is not true since the plan itself claims that the Federal Land Bank and the PCA both have significant unsecured claims. Those claims should be in the class of unsecured creditors. This is more than a formality since unsecured creditors have special rights to object to confirmation of a plan and to receive certain amounts not dedicated to secured creditors under a confirmed plan.

### 8. Payment of Disposable Income

Related to the previous objection is the objection by the Federal Land Bank and the PCA about the debtors' treatment of their disposable income. Section 1225(b)(1) provides that if an unsecured creditor objects to the confirmation, then all of the debtor's disposable income, as that term is defined, be dedicated to the plan. Section 1225(b) does not state specifically who would receive the disposable income. However, since there are clearly defined statutory bases for satisfying the claims of secured creditors and administrative expense claimants which must be met for confirmation, it is clear that the balance of disposable income, if any, would be available for unsecured creditors. While the debtors propose to dedicate all disposable income to the plan, they propose to use any surplus to make additional or extra payments on secured claims. Overall this works to the disadvantage of the Federal Land Bank. It is entitled to have its secured claim paid in full, but the debtors' plan denies it whatever payment on its unsecured claim that it might otherwise receive.

### 9. Real Estate Taxes and Ditch Liens

■ The Farmers Home Administration objects to the failure of the debtors to treat their delinquent real estate taxes as secured claims and the failure to provide in its plan for payment of ditch liens. The plan must provide for payment of delinquent real estate taxes and the ditch liens and treat them all as secured claims.

### 10. Interest Rate

The Production Credit Association objects to the proposed 8% interest rate to be paid on its secured claim. Section 1225(a)(5)(B)(ii) provides that a secured creditor who is being paid over time is entitled to be paid the present value of its allowed secured claim. Obviously when payment is made in deferred installments, the interest rate that is used determines whether or not the creditor is being paid the present value of its allowed secured claim. The debtors propose to use an interest rate of 8%.

■ The proper interest or discount rate is a troublesome problem. However, the Eighth Circuit has addressed this issue and held:

> The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration for the quality of the security and the risk of subsequent default.

*Prudential Insurance Co. v. Monnier (In re Monnier Bros.)*, 755 F.2d 1336, 1339 (8th Cir.1985) *quoting* 5 Collier on Bankruptcy ¶ 1129, at 1129–65 (15th ed. 1979). *See also United States v. Neal Pharmacal Co.*, 789 F.2d 1283 (8th Cir.1986). Absent any evidence of collusive or discriminatory policies, the interest rate which the creditor involved would charge to the debtor in the present regular loan market is presumptively the correct interest rate, keeping in mind, however, that the ultimate decision about the quality of the security and the

risk of subsequent default is for the court and not the creditor.

The following objections are overruled:

### 11. Five-Year Plan

■ The Federal Land Bank and the PCA object to the plan being for five years rather than the statutorily preferred three years under § 1222(c). The Federal Land Bank and PCA imply that some sort of separate motion should be brought to obtain court approval for the longer period. However, I find no such requirement and feel that such a determination is properly made as part of confirmation. Also, the mere fact that the debtors wish to and propose to make payments over a longer period of time constitutes cause for extending payments over the longer period. In fact, Local Rule 185(e) provides "if a plan provides for payments for more than three years, the period is deemed approved for cause under § 1222(c) of the Code."

### 12. Payment of Administrative Expenses

The Federal Land Bank and the PCA also object to the treatment of administrative expenses. However, § 1222(a)(2) specifically provides that, although priority claims under § 507 must be paid in full, they may be paid "in deferred cash payments". This differs markedly and intentionally from the requirement that Chapter 11 plans provide for payment in full of administrative expenses on the effective date of the plan.

### 13. Nondischargeability

■ PCA has filed a complaint to determine that its debt is nondischargeable. The Federal Land Bank and PCA object that no special provision has been made in the plan for PCA's claim. However, I find no statutory requirement that nondischargeable debts be treated differently than other debts in a plan. If PCA were successful in its dischargeability action, its debt would be excepted from the discharge granted on consummation of the case under § 1228(a). Section 1227(a), which deals with the effect of confirmation generally,

provides that a confirmed plan binds creditors. However,. § 1227 specifically provides that the exceptions from discharge of § 1228 are also an exception to the binding effect of a plan. While the automatic stay would prohibit a creditor whose debt was nondischargeable from pursuing its claim during the term of the plan, once the plan is consummated and a discharge entered thus terminating the automatic stay, a creditor would be free to pursue its claim. However, none of this requires the debtors to treat a nondischargeable debt differently in the plan.

### 14. Good Faith

 The Federal Land Bank and PCA object that the plan has not been proposed in good faith because it provides that the Federal Land Bank debt will balloon at the end of the five-year term of the plan, the plan proposes no payments to unsecured creditors, and the plan is not feasible. While some of these matters may lead to confirmation objections of their own, none of them in and of themselves show lack of good faith on the part of the debtors.

Other objections made cannot be determined absent an evidentiary hearing and thus are reserved for later consideration in the event that the debtors file another plan.

THEREFORE, IT IS ORDERED: The confirmation of the debtors' plan dated March 25, 1987 and filed March 26, 1987, is denied.