**In re ERICKSON PARTNERSHIP (No. 486–00333) and Ronald F. Erickson and Lonna L. Erickson, d/b/a Farmers, (No. 486–00334), Debtors.**

**Bankruptcy Nos. 486–00333, 486–00334.**

United States Bankruptcy Court,
D. South Dakota.

Aug. 27, 1987.

Andrew J. Schmid, Office of the U.S. Trustee, Minneapolis, Minn., for U.S. Trustee.

Jonathan K. Van Patten, Vermillion, S.D., for debtors.

Rick A. Yarnall, Sioux Falls, S.D., Chapter 12 Trustee pro se.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### INTRODUCTION

This matter is before the Court on an objection to confirmation of the debtors' Chapter 12 plan of reorganization on the ground that it does not provide for payment of the Chapter 12 Trustee's ten percent (10%) fee on all payments in the plan, filed by Attorney Andrew J. Schmid on behalf of the United States Trustee ("Trustee") on April 9, 1987. Specifically, the Trustee insists that the "Plan must provide payment of the trustee's fee on all claims modified by this reorganization and/or on all payments under this Plan." [1] Conversely, Ronald and Lonna Erickson and Erickson Partnership ("debtors") contend that because Bankruptcy Code Section 1226(c) and analogous case law permit debtors to make payments directly to these

---

1. In his brief, the attorney for the United States Trustee attempts to limit his objection by taking the position that direct payments by farmer-debtors are proper and not subject to the Chapter 12 trustee fee when the debtors do not modify a secured claim. Because the Court is aware that this area of law is unclear and impacts Chapter 12 reorganization, it will address the issues suggested in the Trustee's objection. (Like this area of law, the Trustee's objections are occasionally unclear to both the Court and counsel.)

creditors as part of their Chapter 12 plan of reorganization and Section 586(e)(2) limits the Chapter 12 Trustee's compensation (trustee's fee) to payments "received" by him under the plan, they have otherwise properly complied with Section 586(e) fee requirements. Attorney Jonathan K. Van Patten represented the debtors, and a hearing was held in Sioux Falls, South Dakota, on May 12, 1987. The parties agree that the facts are not in dispute and the issues raised are essentially questions of law.

## BACKGROUND

Debtors initially filed for relief under Chapter 11 of the Bankruptcy Code on May 29, 1986, and, thereafter, the Court granted their motion to convert to Chapter 12 under the new provisions of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 ("Act"). *See In re Erickson Partnership*, 68 B.R. 819 (Bankr.D.S.D.1987), *aff'd*, 74 B.R. 670 (D.S.D.1987). Throughout their reorganization, the debtors have continued to successfully operate their farming and hog raising business near Elk Point, South Dakota.

On March 30, 1987, debtors filed their Chapter 12 plan of reorganization. Under their plan, the debtors, among other things, propose making payments directly to two creditors, Metropolitan Life Insurance Company ("Metropolitan") and First Federal Savings and Loan Association ("First Federal"), instead of through the Chapter 12 Trustee and, therefore, not subject to any 28 U.S.C. § 586(e) trustee fee. Both creditors hold first mortgages on the debtors' homestead property which consists of two parcels of real property totaling approximately 144 acres. All other creditor payments are proposed to be made through the Chapter 12 Trustee.

First Federal holds a first mortgage and note on an approximately 40-acre parcel which includes the debtors' residence and buildings. Debtors were not in default at the time of filing and, pursuant to cash collateral orders, have kept current throughout the reorganization. Under the plan, debtors propose to directly pay First Federal, who is fully secured, according to the terms of the note and mortgage and not subject to payment of any Chapter 12 trustee fee. Stated another way, debtors' proposal does not modify First Federal's claim in that it does not alter any legal or equitable rights of First Federal in the plan of reorganization. Plan provisions which reflect this are:

## ARTICLE IV

### DESIGNATION OF CLASSES OF CLAIMS

. . . .

#### B. SECURED CLAIMS

1. *Class Two—First Federal Savings and Loan Association.* The debtors have a purchase money first mortgage on their residence and the upper forty parcel where the residence is located with First Federal Savings and Loan Association. The outstanding balance on this loan as of May, 1986, was $29,555.87. The maturity date on this loan is March, 2001.

The fair market value of this property is $38,840.00. This creditor is, therefore, oversecured. The debtors have been making payments to this creditor under the authority of the cash collateral orders and they are current on this obligation. Debtors propose to make their monthly payment of $284.00 directly to First Federal Savings and Loan Association.

## ARTICLE V

### DISBURSEMENTS PURSUANT TO THE CHAPTER 12 PLAN

. . . .

#### B. SECURED CLAIMS

1. *Class Two—First Federal Savings and Loan Association.* Debtors owe approximately $29,555.87 to First Federal Savings and Loan Association. This debt is fully secured by a first mortgage on the debtors' homestead property. The debtors will pay directly to the First Federal Savings and Loan Association the sum of $284.00, monthly, for the remain-

der of the loan. First Federal Savings and Loan Association shall retain its lien of record until such secured claim is paid in full.

Metropolitan holds a first mortgage and note on an approximately 104–acre parcel which the debtors primarily farm (it adjoins the 40–acre parcel). Debtors were in default on the note at the time of filing but entered into a stipulation with Metropolitan with respect to claim treatment of Metropolitan's interest on December 22, 1986. In this stipulation, the parties agreed on the amount of Metropolitan's allowed "secured" claim, a ten-year repayment schedule, and specific procedures and remedies for Metropolitan in the event of failure by the debtors to meet their plan obligations. Among other things, the stipulation provided that:

> If the debtors fail to perform any obligation under this Stipulation, secured creditor will provide the debtors, and their attorney of record, with written notice of said default at [debtors' and their attorney's addresses]. Debtors shall be granted ten (10) days following the mailing of said notice to cure any existing default, in which case this Stipulation shall remain effective according to its terms. If the default is not timely cured, secured creditor may submit an ex parte application for relief from stay and abandonment to the Bankruptcy Court with an affidavit stating the default, that notice was given, and that the default has not been cured within the time prescribed. Upon presentation of the ex parte application for relief from automatic stay and abandonment and the supporting affidavit, the Bankruptcy Court shall enter its Order granting relief from stay and abandonment.

Debtors also agreed that this stipulation shall be incorporated into any plan of reorganization. The Court approved this stipulation on January 14, 1987. Under their plan, debtors propose to directly pay Metropolitan according to the terms of the stipulation and not subject payment to any Chapter 12 trustee fee. Because the debtors are proposing to pay Metropolitan the "value" of its collateral and not its entire debt, they have modified Metropolitan's rights in their plan of reorganization. Plan provisions which reflect this are:

### ARTICLE IV

### DESIGNATION OF CLASSES OF CLAIMS

. . . .

### B. SECURED CLAIMS

. . . .

2. *Class Three—Metropolitan Life Insurance Co.* The debtors owe Metropolitan Life Insurance Co. the sum of $48,025.37 as of May 29, 1986. The indebtedness is secured by a first mortgage on the lower 104 parcel.

The debtors and Metropolitan Life Insurance Co. have agreed that the fair market value of this property is $37,-000.00. This creditor is, therefore, undersecured. Pursuant to a stipulation entered into on December 22, 1986, the debtors will make payments in semi-annual installments directly to Metropolitan Life Insurance Co. in the amount of $2,914.50, commencing May 1, 1987, and continuing for twenty equal installments. Metropolitan Life Insurance Co. shall retain its mortgage lien until the secured claim has been satisfied in full as specified herein.

### ARTICLE V

### DISBURSEMENTS PURSUANT TO THE CHAPTER 12 PLAN

. . . .

### B. SECURED CLAIMS

. . . .

2. *Class Three—Metropolitan Life Insurance Co. ("Metropolitan").* Metropolitan holds a first mortgage on another parcel of the debtors' homestead property. The debtors and Metropolitan have entered into a stipulation setting the amount of the allowed secured claim of Metropolitan at $37,000. The stipulation provides for a payment schedule and a remedy for Metropolitan in the event the debtors are unable to make the payments as agreed. The debtors shall

make semi-annual payments in the amount of $2,914.50 directly to Metropolitan for a period of ten years. Metropolitan shall retain its lien of record until such secured claim is paid in full. It is understood that the payment by the debtors may be adjusted to include the Chapter 12 trustee's fee if the Court later decides that the debtors are required to compensate the Chapter 12 Trustee on account of this payment to Metropolitan.

Except for the surrender of property by the debtors, their plan provides that all other payments made shall be made through the Chapter 12 Trustee and subject to a fee. Plan provisions which reflect this are:

ARTICLE IV

DESIGNATION OF CLASSES OF CLAIMS

A. PRIORITY CLAIMANTS

1. *Class One—Union County Treasurer.* The debtors owe the Union County Treasurer for real estate taxes on the following two parcels:

| | | | |
|---|---|---|---|
| [40–acre tract] | — | 1984 taxes | $1,760.05 |
| | | 1985 ta..es | 1,531.33 |
| | | 1986 taxes | 1,410.90 |
| | | | $4,702.28 |
| [104–acre tract] | — | 1983 taxes | $1,555.42 |
| | | 1984 taxes | 1,481.67 |
| | | 1985 taxes | 1,272.06 |
| | | 1986 taxes | 1,162.92 |
| | | | $5,472.07 |

The total amount of taxes owing to the Union County Treasurer is $10,174.35.

B. SECURED CLAIMS

[1. First Federal]

[2. Metropolitan]

3. *Class Four—Farmers Home Administration.* The Farmers Home Administration has made several loans to the debtors as evidenced by the following notes:

| Date of Note | Original Principal Amount | Unpaid Principal | Unpaid Interest | Daily Accrual |
|---|---|---|---|---|
| 2/12/85 | $30,999.31 | $30,999.31 | $2,711.14 | 6.1274 |
| 2/12/85 | $64,405.96 | $64,405.96 | $4,363.28 | 9.2639 |
| 2/12/85 | $25,153.32 | $25,153.32 | $3,489.25 | 7.4082 |
| 2/12/85 | $48,088.57 | $48,088.57 | $6,670.80 | 14.1631 |
| 2/12/85 | $39,294.47 | $39,294.47 | $5,197.36 | 11.0347 |
| 5/2/85 | $13,980.00 | $8,649.31 | $176.54 | 1.1848 |

The total indebtedness at the time of the filing of the petition was $239,199.31. The indebtedness is secured by a second mortgage on the ... 40[–acre] parcel and the ... 104[–acre] parcel, together with an Article Nine security interest in the debtors' equipment and machinery, livestock, and grain.

Based on the fair market valuations of the debtors' property, the Farmers Home Administration has a secured claim of $9,284.13 in the debtors' upper 40 parcel, no secured claim in the debtors' lower 104 parcel, a secured claim of $9,970.00 in the debtors' machinery, a secured claim of $2,800.00 in the debtors' hog equipment, a secured claim of $24,498.00 in the debtors' livestock, and a secured claim of $4,400.00 in the debtors' grain. The Farmers Home Administration has a secured claim for $50,952.13. This creditor is, therefore, undersecured.

The debtors propose to make payments to the Chapter 12 Trustee for distribution to the Farmers Home Administration on the amount of its secured claim. The Farmers Home Administration shall retain its mortgage lien until the secured claim has been satisfied in full as specified herein.

4. *Class Five—Agricultural Stabilization and Conservation Service ("A.S.C. S.").* The debtors owe the A.S.C.S. a total amount of $12,180.88. The A.S.C.S. has a lien on a 24' × 7' Rings High Chicago grain bin, together with a grain spreader and an unloading auger.

The fair market value of this property is $3,500. This creditor is, therefore, undersecured. The debtors propose to make payments to the Chapter 12 Trustee for distribution to the A.S.C.S. on the amount of its secured claim. The A.S.C.S. shall retain its lien until the secured claim has been satisfied in full as specified herein.

5. *Class Six—Valley Bank of Union County.* The debtors owe Valley Bank of Union County the total amount of $2,743.29. This indebtedness is secured by a first lien on a 1979 Ford Bronco which has a fair market value of $4,000.00. This creditor is, therefore, oversecured. The debtors propose to make payments to the Chapter 12 Trustee for distribution to Valley Bank of Union County on the amount of its secured claim. The Valley Bank of Union County shall retain its lien until the secured claim has been satisfied in full as specified herein.

6. *Class Seven—State Bank of Alcester.* The debtors owe the State Bank of Alcester the total amount of $5,500.00. This indebtedness is secured by a second lien on a 1979 Ford Bronco which has a value, after the lien in favor of Valley Bank of Union County, in the amount of $1,256.71. This creditor is, therefore, undersecured. The debtors propose to make payments to the Chapter 12 Trustee for distribution to the State Bank of Alcester on the amount of its secured claim. The State Bank of Alcester shall retain its lien until the secured claim has been satisfied in full as specified herein.

7. *Class Eight—Home Trust Savings and Loan.* The debtors owe Home Trust Savings and Loan approximately $12,757.72 on a loan which is secured by real property located at 508 E. Rose, Elk Point, SD, and legally described as Lot 4 and E ½ of Lot 5 in Block 16 W & H Add. Elk Point, Union County. The fair market value of the real property and residence is approximately the amount of the outstanding debt. Debtors propose to surrender the collateral to Home Trust Savings and Loan upon confirmation of this plan in full satisfaction of the debt.

C. UNSECURED AND UNDERSECURED CLAIMS

1. *Class Nine—Unsecured and Undersecured Claims.* The claims of the general unsecured creditors total approximately $26,974.83. The undersecured claim of Metropolitan Life Insurance Co. totals $11,025.37. The undersecured claim of the Farmers Home Administration totals $188,247.18. The undersecured claim of the A.S.C.S. totals $8,680.88. The undersecured claim of the State Bank of Alcester totals $4,243.29. The total of the unsecured and the undersecured claims is $239,-171.55.

ARTICLE V

DISBURSEMENTS PURSUANT TO THE CHAPTER 12 PLAN

Except as specifically provided herein, the future earnings of the debtors are submitted to the Chapter 12 Trustee, Rick A. Yarnall, for the purpose of disbursing payments under the plan.

A. PRIORITY CLAIMS

1. *Class One—Union County Treasurer.* The debtors owe approximately $10,-174.35 for real estate taxes to the Union County Treasurer. This sum will be amortized over three years at the state-imposed interest rate of 15% per annum. The debtors will pay to the Chapter 12 Trustee, the sum of $1,175.44, quarterly, beginning on July 1, 1987, for a period of three years. The Chapter 12 Trustee shall disburse to the Union County Treasurer the net sum of $1,068.44 on account of each payment made by the debtors.

B. SECURED CLAIMS

[1. Metropolitan]

[2. First Federal]

3. *Class Four—The Farmers Home Administration ("Farmers Home").* Farmers Home has an allowed secured claim of $50,952.13. The debtors will pay this amount, amortized over twenty years, plus interest at the rate of 10% per annum. The debtors shall pay to the Chapter 12 Trustee the sum of $540.87, monthly, commencing May 1, 1987, for a period of three

years. The Chapter 12 Trustee shall disburse to Farmers Home the net sum of $491.70. After three years, the net sum of $491.70 shall be paid directly by the debtors to Farmers Home for an additional seventeen years. Farmers Home shall retain its lien of record until such secured claim is paid in full.

4. *Class Five—Agricultural Stabilization and Conservation Service ("A.S.C.S.")*. A.S.C.S. has an allowed secured claim of $3,500.00. The debtors will pay this amount, amortized over three years, plus interest at the rate of 10% per annum. The debtors shall pay to the Chapter 12 Trustee the sum of $375.33, quarterly, commencing June 1, 1987, for a period of three years until the secured claim of the A.S.C.S. is fully paid. The Chapter 12 Trustee shall disburse to A.S.C.S. the net sum of $341.21. The A.S.C.S. shall retain its lien of record until such secured claim is paid in full.

5. *Class Six—Valley Bank of Union County ("Valley Bank")*. Valley Bank has an allowed secured claim of $2,743.29. The debtors will pay this amount, amortized over three years, plus interest at the rate of 10% per annum. The debtors shall pay to the Chapter 12 Trustee the sum of $294.18, quarterly, commencing June 1, 1987, for a period of three years until the secured claim of Valley Bank is fully paid. The Chapter 12 Trustee shall disburse to Valley Bank the net sum of $267.44. Valley Bank shall retain its lien of record until such secured claim is paid in full.

6. *Class Seven—State Bank of Alcester ("State Bank")*. State Bank has an allowed secured claim of $1,256.71. The debtors will pay this amount, amortized over three years, plus interest at the rate of 10% per annum. The debtors shall pay to the Chapter 12 Trustee the sum of $272.36, semi-annually, commencing August 1, 1987, for a period of three years until the secured claim of State Bank is fully paid. State Bank shall retain its lien of record until such secured claim is paid in full.

7. *Class Eight—Home Trust Savings and Loan*. Home Trust Savings and Loan has an allowed secured claim of $12,757.72. The debtors shall surrender the collateral to Home Trust Savings and Loan upon confirmation in full satisfaction of the debt.

C. UNSECURED AND UNDERSECURED CLAIMS

*Class Nine—Unsecured and Undersecured Claims*. The debtors shall pay to the Chapter 12 Trustee the sum of $823.02, semi-annually, commencing August 1, 1987, and continuing for a period of three years. The Chapter 12 Trustee shall disburse the net amount of this payment to the unsecured and undersecured claims on a pro rata basis. The present value of these payments is greater than the amount which would have been received by the unsecured creditors in a Chapter 7 liquidation. The debtors shall pay any excess of disposable income remaining at the end of three years from the date of confirmation of this plan to the Chapter 12 Trustee.

The debtors shall retain all property of the estate, except as agreed with Home Trust Savings and Loan. The debtors shall adhere to the above-described payment schedules, and such payments are to be made under this plan for a period of three years from the date of this order.

While a confirmation hearing was originally set for April 21, 1987, it was continued until May 12, 1987. This was at the request of both the Chapter 12 Trustee and the United States Trustee. Except for the Chapter 12 trustee's fee issue, all other objections were resolved on or before the hearing. The Court confirmed the debtors' plan of reorganization subject to the resolution of this issue.

ISSUES

The principal issues raised are:

1) Whether Chapter 12 of the Bankruptcy Code permits a "family farmer" debtor to directly pay creditors under his plan of reorganization, and not through the Trustee, when—

a) the creditor's approved claim is not modified in the debtor's plan of reorganization, *if*

i) that creditor is fully secured; *or*

ii) pursuant to the Bankruptcy Code, that debtor is required to cure any default and make payments according to the contract terms; *or*

b) the creditor's claim is modified, *if*

i) that creditor's claim receives the same treatment as other claims within a particular class of creditors, unless that creditor agrees to less favorable treatment;

ii) that creditor's claim is not "preferred" to other "unsecured" creditors similarly situated, thereby unfairly discriminating against those creditors;

iii) that creditor has established a self-monitor and remedy device in the event of plan obligation failure; *and*

iv) that creditor does not object to direct payment.

2) If so, whether the Chapter 12 Trustee, pursuant to 28 U.S.C. § 586(e) or otherwise, may properly assess a ten percent fee on direct payments made by the debtor to creditors under his plan of reorganization.

### A. *First Issue*

■■■ As to the first issue, the Court holds that Chapter 12 of the Bankruptcy Code permits a "family farmer" debtor (farmer-debtor) to directly pay creditors under his plan of reorganization, and not through the Trustee, when: a) the creditor's approved claim is not modified in the debtor's plan of reorganization, *if:* i) that creditor is fully secured; *or* ii) pursuant to the Bankruptcy Code, that debtor is required to cure any default and make payments according to the contract terms; *or* b) the creditor's approved claim is modified, *if:* i) that creditor's claim receives the same treatment as other claims within a particular class of creditors, unless that creditor agrees to less favorable treatment; ii) that creditor's claim is not "preferred" to other

"unsecured" creditors similarly situated, thereby unfairly discriminating against those creditors; iii) that creditor has established a self-monitor and remedy device in the event of plan obligation failure; *and* iv) that creditor does not object to direct payment. This is based on the following discussion.

Debtors contend that Bankruptcy Code Section 1226(c) allows them to directly pay both First Federal and Metropolitan under their plan of reorganization. As stated, debtors are current on their First Federal payments and propose to continue to pay according to the terms of the note and mortgage. While modifying Metropolitan's claim, the debtors have entered into a stipulation which agrees on the amount of the "secured" claim owed, a payment schedule, and specific procedures and remedies for failure to meet plan obligations. Also, neither First Federal nor Metropolitan objects to direct payment by the debtors.

Bankruptcy Code Section 1226(c) provides:

*"Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."* (emphasis added)

11 U.S.C. § 1226(c).

Its plain language clearly provides that a farmer-debtor may directly pay creditors under his plan of reorganization. This provision is identical to Bankruptcy Code Section 1326(c). Unlike its sister provision in Chapter 13,[2] Bankruptcy Code Section 1225(a)(5) (a confirmation of plan provision), in pertinent part, also recognizes direct payment by the debtor:

Except as provided in subsection (b), the court shall confirm a plan if—

. . . .

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

11 U.S.C. § 1325(a)(5)(B).

---

**2.** Bankruptcy Code Section 1325(a)(5) reads, in part, as follows:

Except as provided in subsection (b), the court shall confirm a plan if—

. . . .

(5) with respect to each allowed secured claim provided for by the plan—

. . . .

(5) with respect to each allowed secured claim provided for by the plan—
....

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be *distributed by the trustee or the debtor under the plan* on account of such claim is not less than the allowed amount of such claim. (emphasis added)

11 U.S.C. § 1225(a)(5)(B).

Under comparable Chapter 13 provisions, with some confusion, courts have long recognized the debtor's ability to make direct payments. Generally at issue was whether the "wage-earner" debtor may directly pay the creditor holding a mortgage on the debtor's principal residence (pursuant to 11 U.S.C. § 1322(b)(2), a debtor may not modify mortgage terms of a principal residence in Chapter 13; however, there is no similar requirement in Chapter 12). *See, e.g., In re Doherty*, 782 F.2d 1025, slip op. at 4 (1st Cir.1985) ("a Chapter 13 debtor in arrears on mortgage payments must include both payments in arrears and current payments under the plan"); *Matter of Bradley*, 705 F.2d 1409, 1411 (5th Cir.1983) (debtor's automatic deduction from wages to continue payments on "fully secured" automobile loan allowed); *Matter of Foster*, 670 F.2d 478, 486–90 (5th Cir.1982) ("a plan cannot provide that the current portion of a mortgage claim will be made outside the plan ... when the arrearages are being cured under § 1322(b)(5)"); *In re Glasper*, 28 B.R. 6, 7, 8 (B.A.P. 9th Cir.1983) (bifurcation of payments under plans calling for current payment of secured creditors outside the plan, and payment of arrearages on those secured debts through the plan, is impermissible under Chapter 13); *In re Evans*, 66 B.R. 506, 509, 510 (Bankr.E.D.Pa. 1986) (under the Bankruptcy Code, the debtor may directly pay the creditor if the secured portion of the creditor's claim is not modified); *In re Tartaglia*, 61 B.R. 439, 441 (Bankr.D.R.I.1986) (with respect to mortgage claims, followed *Foster*); *Citicorp Person-to-Person Financial Center v. Jordan*, 32 B.R. 867, 870 (Bankr.S.D.

Ohio 1983); *In re Case*, 11 B.R. 843, 846, 847 (Bankr.D. Utah 1981) (secured claim payments may be made outside the plan); *In re Hines*, 7 B.R. 415, 420 (Bankr.D.S.D. 1980) (if neither delinquent nor modified, only the first mortgage claim may be made outside the plan); *In re Centineo*, 4 B.R. 654 (Bankr.D.Neb.1980) ("Congress left open to the debtor the option to make payments to the trustee for distribution to creditors or to make payments directly to creditors"); *In re Wittenmeier*, 4 B.R. 86, 88 (Bankr.M.D.Tenn.1980); *see also In re Weeden*, 7 B.R. 106 (Bankr.D.R.I.1980) (a proposal to pay one unsecured claim outside the plan, regardless of whether that creditor agrees to direct payment, is impermissible under Chapter 13); *In re Tatum*, 1 B.R. 445, 446 (Bankr.S.D. Ohio 1980) (any attempt to directly pay a "partially" secured claim violates Sections 1322(a)(3) and (b)(1) and the "fairness" test otherwise raised by Section 1325(a)(3)); *In re Blevins*, 1 B.R. 442, 443–44 (Bankr.S.D. Ohio 1979). Confusion exists on determining whether plan payments are "inside" (under the plan), "outside" (not under the plan)—or "upside down." *Foster*, 670 F.2d at 485–86.

Within the context of Chapter 12, a few courts have recognized the debtor's ability to make direct payment. *In re Lenz*, 74 B.R. 413, 415 (Bankr.C.D.Ill.1987); *In re Hagensick*, 73 B.R. 710, 713–14 (Bankr. N.D. Iowa 1987); *In re Rott*, 73 B.R. 366, 375 (Bankr.D.N.D.1987); *In re Citrowske*, 72 B.R. 613, 615–16 (Bankr.D.Minn.1987). When and under what circumstances a debtor may properly propose direct payment is subject to some dispute. In *Lenz*, the court held that if a debtor does not modify a secured creditor's claim, he has the option under the Bankruptcy Code to directly pay that creditor. 74 B.R. at 415. However, in *Hagensick*, the court held that whether the debtor may make direct payments is a matter of court discretion and subject to a "demonstration of the debtor's ability to make direct payments." 73 B.R. at 713. That court also suggested that while this generally applies to claims which are not modified, it may also apply to

claims which are modified. *Id.* at 714. Neither *Rott* nor *Citrowske* is clear on when a debtor may make direct payments, but hint that there are circumstances other than when the claim is not modified. *Rott*, 73 B.R. at 375; *Citrowske*, 72 B.R. at 615–16.

Because Section 1225(a)(1) requires that the plan comply with other Code provisions, the question raised is whether any other provisions preclude these farmer-debtors from directly paying either creditor under their plan of reorganization. 11 U.S.C. § 1225(a)(1). *See also* 11 U.S.C. § 1222(a)(1) ("The plan shall—provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan."). It necessarily includes consideration of whether direct "plan" payments to either First Federal or Metropolitan "provide the same treatment for each claim within a particular class" (unless the holder agrees to less favorable treatment) under Section 1222(a)(3);[3] "discriminate unfairly" against any class of unsecured claimants as defined by Section 1222(b)(1);[4] or are not proposed in "good faith" as required by Section 1225(a)(3).[5] *See Foster*, 670 F.2d at 488.

■ Any argument that debtors' proposal of direct payment to First Federal violates these provisions is without merit. First Federal's claim is not modified in the plan. 11 U.S.C. § 1222(b)(2).[6] Its secured claim may be classified separately, 11 U.S.C. § 1222(a)(3), and, because it is fully secured,[7] its claim treatment certainly does not "discriminate unfairly" as against any unsecured claims. *Foster*, 670 F.2d at 488. It also necessarily follows from applicable case law that this proposal is made in "good faith." 11 U.S.C. § 1225(a)(3); *Foster*, 670 F.2d at 488; *Matter of Bradley*, 705 F.2d at 1411; *In re Lenz*, 74 B.R. at 413.

■ Direct debtor payment to Metropolitan poses a more difficult question. Unlike payment of other "undersecured" claims, debtors propose to directly pay Metropolitan under their plan of reorganization. Their negotiations resulted in Metropolitan's agreeing to be directly paid the value of its secured claim. The stipulation provides Metropolitan with a self-monitor and remedy device in the event of plan obligation failure by the debtors. Within the context of Chapter 13, one court has held that any attempt to directly pay a "partially" secured claim violates Sections

3. Bankruptcy Code Section 1222(a)(3) reads as follows:
   "The plan shall—
   ....
   (3) if the plan classifies claims and interests, provide the same treatment for each claim or interest within a particular class unless the holder of a particular claim or interest agrees to less favorable treatment."
   11 U.S.C. § 1222(a)(3).

4. Bankruptcy Code Section 1222(b)(1) reads as follows:
   Subject to subsections (a) and (c) of this section, the plan may—
   (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.
   11 U.S.C. § 1222(b)(1).

5. Bankruptcy Code Section 1225(a)(3) reads as follows:

"Except as provided in subsection (b), the court shall confirm a plan if—
   ....
   (3) the plan has been proposed in good faith and not by any means forbidden by law."
11 U.S.C. § 1225(a)(3).

6. Bankruptcy Code Section 1222(b)(2) reads as follows:
   "Subject to subsections (a) and (c) of this section, the plan may—
   ....
   (2) modify the rights of holders of secured claims, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."
   11 U.S.C. § 1222(b)(2).

7. This means the value of the collateral securing the claim is equal to or greater than the amount of the claim. 11 U.S.C. § 506(a). *See also In re Brandenburg*, 71 B.R. 719, 720 (Bankr.D.S.D. 1987).

1222(a)(3) and (b)(1)'s sister provisions and the "fairness" test otherwise raised by the "good faith" provision [11 U.S.C. § 1225(a)(3) ].[8] *In re Tatum,* 1 B.R. 445, 446 (Bankr.S.D. Ohio 1980). *But see In re Evans,* 66 B.R. 506, 507–10 (Bankr.E.D.Pa. 1986) (under the Bankruptcy Code, the debtor may directly pay the creditor if the secured portion of the creditor's claim is not modified). Under similar analysis, a few courts have recognized this as a problem when a debtor attempts to pay an unsecured claim, regardless of whether that creditor agrees to direct payment. *In re Weeden,* 7 B.R. 106 (Bankr.D.R.I.1980). *See also In re Case,* 11 B.R. 843, 848 (Bankr.D. Utah 1981).

Assuming the *Tatum* analysis, as against the *Evans* approach, is more in line with the letter and spirit of the Code,[9] this Court still cannot find that the debtors' direct payment to Metropolitan violates Sections 1222(a)(3), (b)(1) or 1225(a)(3). Under Section 1222(a)(3), Metropolitan may agree to less favorable treatment—that of direct payment by the debtors. Because the debtors agree to pay Metropolitan the *value* of its secured claim, it clearly does not "discriminate unfairly" as against other unsecured creditors. If anything, in this type of negotiation and settlement, major creditors commonly compromise their position—*i.e.,* agree to value without dispute and not contest feasibility at confirmation. *Cf. In re Dziedzic,* 9 B.R. 424 (Bankr.S.D. Tex.1981). Because the debtors, by stipulation, have provided Metropolitan with a self-monitor and remedy device in the event of plan obligation failure and that creditor does not object to direct payment, this proposal is offered in "good faith." 11 U.S.C. § 1225(a)(3). *See also* 11 U.S.C. § 1222(b)(11) (authorization for "any other appropriate provision not inconsistent with this title"). Finally, while admittedly Congress fashioned Chapter 12 after Chapter 13, in a Chapter 11 case, the farmer-debtor has always (as debtor-in-possession) made direct payments to his creditors according to the plan of reorganization. In this Court's many years of experience, direct payment by the farmer-debtor pursuant to the plan has not posed any difficulty for his creditors, the Court, or himself. This Court, therefore, holds that the debtors may directly pay both First Federal and Metropolitan under their plan of reorganization.

### B. *Second Issue*

As to the second issue, the Court holds that the Chapter 12 Trustee, pursuant to 28 U.S.C. § 586(e) or otherwise, may not assess a ten percent fee on direct payments made by the debtors to the creditors, First Federal and Metropolitan, under their plan of reorganization. This is based on the following discussion.

Title 28 U.S.C. § 586(e) reads, in pertinent part:

(e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—

(A) a maximum annual compensation for such individual, not to exceed the [lowest] annual rate of basic pay in effect for step 1 *of* grade GS–16 of the General Schedule prescribed under section 5332 of title 5; and

(B) a percentage fee [,] not to exceed—

(i) in the case of a debtor who is not a family farmer, ten percent, or

(ii) in the case of a debtor who is a family farmer, the sum of—

(I) not to exceed ten percent of the payments made under the plan of such debtor, with respect to payments in an aggregate amount not to exceed $450,-000; and

(II) three percent of payments made under the plan of such debtor, with

---

**8.** In *Foster,* the Fifth Circuit noted, but did not resolve, this issue. 670 F.2d at 488.

**9.** Based on the 1986 amendments to 28 U.S.C. § 586(e)(2) and this Court's interpretation that only payments "received" by the Chapter 12 Trustee are subject to the fee, adoption of the *Evans* approach would certainly result in the payment of few fees, if any, in Chapter 12 reorganization.

respect to payments made after the aggregate amount of payments made under the plan exceeds $450,000;

based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual shall collect such percentage fee from all payments re-ceived by such individual under plans in the cases under chapter *12 or* 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall [pay to the Treasury] deposit in the United States Trustee System Fund—

(A) any amount by which the actual compensation of such individual exceeds [five percent] 5 per centum upon all payments *received* under plans in cases under chapter *12 or* 13 of title 11 for which such individual serves as standing trustee; and

(B) any amount by which the percentage for all such cases exceeds—

(i) such individual's actual compensation for such cases, as adjusted under subparagraph (A) of [this] paragraph (1); plus

(ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases. Subject to the approval of the Attorney General, any or all of the interest earned from the deposit of payments under plans by such individual may be utilized to pay actual, necessary expenses without regard to the percentage limitation contained in subparagraph (d)(1)(B) of this section.

28 U.S.C. § 586(e). (1986 Amendments are underlined and changes are in blocks.)

In its pre–1986 form, this provision applied exclusively to Chapter 13 cases commenced in United States Trustee "pilot" judicial districts.[10] *See In re Savage,* 67 B.R. 700 (D.R.I.1986). The District of South Dakota was included in the United States Trustee System experiment.[11] 1 *Collier on Bankruptcy* ¶ 6.02[3][a], at 6–24, 25 (15th ed. 1987). With respect to non-pilot districts, Bankruptcy Code Section 1302(e) was controlling. *See Matter of Foster,* 670 F.2d 478, 488 (5th Cir.1982); *In re Case,* 11 B.R. 843, 845–48 (Bankr.D. Utah 1981); *In re Centineo,* 4 B.R. 654 (Bankr.D.Neb.1980). With the exception of whether the Attorney General or the Bankruptcy Judge fixes the amount of the Chapter 13 trustee's fee, Sections 1302(e) and 586(e)'s statutory language was identical. *See In re Savage,* 67 B.R. 700 (D.R.I.1986). Unlike Section 586(e), Section 1302(e) was not amended in the 1986 Act. Of particular interest is the addition of the language, *"received by such individual,"* in Section 586(e)(2).

Under the Act of 1986, Congress extends the United States Trustee System to all judicial districts. 28 U.S.C. § 581(a). It apparently will be phased in over a several-year period.[12] *See* Transition and Adminis-

---

**10.** Under this experimental program, the United States Trustee, among other things, appointed individuals or standing trustees to serve as trustees in individual repayment plans under Chapter 13. 1 *Collier on Bankruptcy* ¶ 6.02[2], at 6–22 (15th ed. 1987). This program became operational on October 1, 1979. While originally scheduled to terminate on April 1, 1984, the program was extended three times and in effect until November 26, 1986 (the effective date of the 1986 Act). *Id.* at ¶ 6.29[1].

**11.** Others included: District of Maine, District of New Hampshire, District of Massachusetts, District of Rhode Island, Southern District of New York, District of Delaware, District of New Jersey, Eastern District of Virginia, District of District of Columbia, Northern District of Alabama, Northern District of Texas, Northern Dis-

trict of Illinois, District of Minnesota, District of North Dakota, Central District of California, District of Colorado, and District of Kansas. 1 *Collier on Bankruptcy* ¶ 6.02, at 6–24, 25 (15th ed. 1987).

**12.** Like the District of South Dakota, if the judicial district was part of the pilot program (see n. 11 for list), then Subtitle A, Title II amendments, "Activities of the United States Trustees," became effective thirty days after the date of enactment. (October 27, 1986, was the enactment date. See n. 10.) *See also In re Restea,* 76 B.R. 728, 732 (Bankr.D.S.D.1987), for explanation of Subtitle A, Title II amendments' effective date. For the following districts, the amendments become effective and apply to cases commenced after either the expiration of 270 days from the effective date of the Act (approximate-

trative Provisions, Title III § 302 of the 1986 Act, *reprinted in* 1986 U.S.Code Cong. & Admin.News, 99th Cong., 2d Sess., Vol. 2 (P.L. 99–554). As a result, Section 1302(e) will continue to apply until the judicial district is otherwise incorporated into the United States Trustee System, and, thereafter, Section 586(e) will apply. This is also true in Chapter 12 cases (*i.e.*, 11 U.S.C. § 1202(d) applies).

What this means is that over this "phase-in" period, non-incorporated judicial district judges may set the percentage amount payable by the farmer-debtor to the Chapter 12 Trustee on a case-by-case basis (up to ten percent). *See In re Hagensick*, 73 B.R. 710, 714–15 (Bankr.N.D. Iowa 1987) (the court, pursuant to Section 1202(d), while holding that direct debtor payments are not subject to the Chapter 12 trustee fee when the creditor's claim is not modified, also reduced the fees on all payments made through the Trustee to five percent); *In re Mikkelsen Farms, Inc.*, 74 B.R. 280, 292–93 (Bankr.D.Or.1987) (the court held that transfers-in-kind (land for land) under 11

U.S.C. § 1225(a)(5) should be treated as "payments under the plan" within the meaning of Section 1202(d)(1)(B), but further held that the Chapter 12 Trustee may collect for the "reasonable value" of his services only if he is "required to perform services to facilitate" that transfer); *see also Foster*, 670 F.2d at 491; *In re Eaton*, 1 B.R. 433 (Bank.M.D.N.C.1979); 5 *Collier on Bankruptcy* ¶ 1302.01, at 1302–26, 27 (15th ed. 1987). Under the United States Trustee System, the Attorney General, and not the Bankruptcy Judge, sets the amount payable, which has been set at ten percent, 28 U.S.C. § 586(e).[13] *In re Savage*, 67 B.R. 700, 704–08 (D.R.I.1986); *In re Citrowske*, 72 B.R. 613, 615 (Bankr.D.Minn.1987).

Consequently, a farmer-debtor who presently lives in the Northern District of Iowa (non-United States Trustee District), as against in the District of South Dakota, is allowed to pay a substantially smaller trustee fee, clearly enhancing successful farmers' reorganization prospects. Remembering that this fee generally is payable for a three- to five-year period,[14] the

---

ly August 24, 1987) or thirty days from the date the Attorney General certifies the region pursuant to Section 303 of the Act. Included are: Commonwealth of Puerto Rico, District of Connecticut, Districts in New York (other than Southern District), District of Pennsylvania, District of South Carolina, District of West Virginia, Western District of Virginia, Eastern District of Texas, District of Wisconsin, District of Iowa, District of New Mexico, District of Oklahoma, District of Wyoming, District of Florida, and District of Georgia. Transition and Administrative Provisions, Title III § 302(d)(1) of the 1986 Act, *reprinted in* 1986 U.S. Code Cong. & Admin. News, 99th Cong, 2d Sess., Vol. 2 (P.L. 99–554). For the following districts, the amendments become effective and apply to cases commenced after either two years from the effective date of the Act (approximately November 28, 1988) or thirty days after certification of the Attorney General. Included are: District of Louisiana, District of Mississippi, Southern and Western Districts of Texas, District of Kentucky, District of Tennessee, District of Michigan, District of Ohio, Districts in Illinois (other than Northern District), District of Indiana, District of Arkansas, District of Nebraska, District of Missouri, District of Arizona, District of Hawaii, District of Guam, Districts in California (other than Central District), District of Nevada, District of Alaska, District of Idaho, District of Montana, District of Oregon, District of Washington, and Commonwealth of Northern Maria-

na Islands. Section 302(d)(2). In Alabama and North Carolina, the amendments do not become effective until either those districts elect to be included in a region or October 1, 1992, whichever is earlier. Section 302(d)(3).

**13.** Judge Hill, in *In re Rott*, 73 B.R. 366, 375 (Bankr. D.N.D. 1987), relying on *In re Hagensick*, suggests that the judges may review the fee paid to the Chapter 12 Trustees on a case-by-case basis (dicta). This Court, however, believes that *In re Savage's* analysis and holding are correct on this point. *See also In re Citrowske*, 72 B.R. 613, 615 (Bankr.D.Minn.1987) (court may not adjust the Chapter 12 trustee fee).

**14.** To understand how this works, Bankruptcy Code Section 1228(e), which reads:

"After the debtor is granted a discharge, the court shall terminate the services of any trustee serving in the case,"

must be read in conjunction with several other provisions. Under Chapter 12, a discharge is granted when the debtor, except for Section 1222(b)(9) long-term debt repayment, has completed all payments required under the plan. Section 1222(c) describes the time period for plan payments:

"Except as provided in subsections (b)(5) and (b)(9), the plan may not provide for payments over a period that is longer than three

extra amount is significant. In the instant case, the debtors are proposing to pay the Chapter 12 Trustee a fee in an approximate amount of $5,000 over a three-year period. In the Northern District of Iowa, they otherwise would only have to pay approximately $2,500. (The Court is aware that many Chapter 12 plans require substantially larger payments during the three- to five-year period.)

The crucial question raised is what did Congress intend by the addition of the language, "received by such individual," in Section 586(e)(2). Relying on *In re Rott*, 73 B.R. 366 (Bankr.D.N.D.1987), and *In re Citrowske*, 72 B.R. 613 (Bankr.D.Minn. 1987), the Trustee simply insists that this amendment does not mean anything. His argument is that because these two bankruptcy judges, who are in United States Trustee Districts, did not mention the amendment in their respective opinions, Congress did not intend anything by its revision.[15] This Court finds the Trustee's position untenable. Congress, in neither amending Section 586(e)'s sister provision, Section 1302(e), nor including this additional language in Section 1202(d), clearly had a purpose in mind. The plain language of the amendment within the context of that provision militates a finding that if the farmer-debtor is entitled under the Code to make payments directly to certain creditors, then because they are not "received" by the Trustee, they are not subject to the fee.

Shortly after the effective date of the 1978 Code and commencement of the United States Trustee System pilot district experiment, this Court, in *In re Hines*, 7 B.R. 415 (Bankr.D.S.D.1980), addressed the issue of whether mortgage payments, which are neither delinquent nor modified and paid directly by the wage-earner debtor, are subject to the Chapter 13 trustee fee.[16] Relying on the Code and its supporting policy, and practical considerations, this Court held that the Trustee is not entitled to a ten percent fee when a debtor makes payments directly to a creditor who holds the first mortgage on a debtor's homestead:

There are valid reasons for a debtor to continue making payments directly to creditors holding mortgages on a debtor's homestead property. Long after the Chapter 13 Plan has expired a debtor is usually still making payments on the mortgage. The code contemplates that such an event will occur. It would be ridiculous to have debtors subject the mortgage payments to the trustee for the term of the plan and then have to go through the process of picking the payments up again.

Further, a creditor holding a mortgage is usually quite capable of looking after its own interests. It is the experience of this Court that if a debtor defaults on a mortgage, the creditor is usually ready and capable of taking care of himself.

The effect of the debtor paying the creditor holding a mortgage on the homestead is to relieve the trustee from any actual responsibility for making sure the debt is paid. This Court will not permit

---

years unless the court for cause approves a longer period, but the court may not approve a period that is longer than five years."
11 U.S.C. § 1222(c).
Finally, Sections 1202(d)(2) and 586(e)(2) only allow fee collection while "serving" as a trustee.

**15.** In view of the substantive discussion of 28 U.S.C. § 586(e)(2) in a June 23, 1987, "memorandum" issued by Thomas J. Stanton, Director and Counsel, Executive Office for United States Trustees, to standing trustees, the attorney for the United States Trustee's position is ironic. With respect to the amendment to 28 U.S.C. § 586(e)(2), Director Stanton, in pertinent part, observed:

This rather crucial section was changed. The paragraph now reads, in pertinent part:

"Such individual [standing trustee] shall collect such percentage fee from all payments *received by such individual* under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee." The underlined words were added to the previous version of that paragraph. The added *language clearly precludes* the standing trustee from *receiving the statutory percentage fee on payments not actually received by the standing trustee.* (emphasis added)

**16.** While the Court addressed this question within the context of 11 U.S.C. § 1302(e) and not 28 U.S.C. § 586(e), the result is the same, because the pertinent language of these provisions is identical.

the Trustee to reap a windfall where he does no work. Here, if the Court makes the mortgage payments subject to the Trustee, it would result in the Trustee receiving $1,000.00 in return for very little work. Such a payment could be responsible for the Debtors' Chapter 13 Plan failing.

*Id.* at 421–22.[17]

This was balanced against the recognition that no "capable Trustee is going to perform work without adequate compensation." *Id.* at 421.

Other courts addressing this issue within the context of Chapter 13 have generally held that when the wage-earner debtor does not modify a mortgage claim arising from his principal residence, then direct plan payments by the debtor are not subject to the trustee fee. *See Foster,* 670 F.2d at 489 (held that if the debtor opts to cure the mortgage arrearages during the three- to five-year period while continuing to pay according to the terms of the underlying promissory note and mortgage, these payments must be made through the Chapter 13 Trustee and, thus, subject to the fee).

Under Chapter 12, two bankruptcy judges in United States Trustee Districts and one bankruptcy judge in a non-United States Trustee District have essentially held that when a farmer-debtor does not attempt to modify the rights of the creditor by curing arrearages or in any other respect, these payments are not subject to the Chapter 12 trustee fee. *See In re Rott,* 73 B.R. 366, 375 (Bankr.D.N.D.1987) (United States Trustee District); *In re Citrowske,* 72 B.R. 613, 614–15 (Bankr.D. Minn.1987) ("unaltered regular contractual payments on long term debts") (United States Trustee District); *In re Hagensick,* 73 B.R. 710, 714 (Bankr.N.D. Iowa 1987) (non-United States Trustee District).

While not discussing Section 586(e)(2) amendments, in *Citrowske,* Judge Kressel further summarily held that any "altered" claim payments directly made by the farmer-debtors are subject to the Chapter 12 trustee fee:

This is so even if the plan provides that the payment will actually be made by the debtors or from some other source. Since there is no financial advantage to the debtors distributing direct payments under the plan, there is little reason not to require all income dedicated for plan payments to be paid to the trustee to be distributed pursuant to the plan.

72 B.R. at 616.

Assuming that these debtors are permitted to make payments directly to both First Federal and Metropolitan, which payments are not otherwise subject to the Chapter 12 trustee fee, what policy and practical concerns, if any, are raised by this result? At the outset, this Court recognizes that the Trustee generally performs a necessary supervisory role after confirmation over the execution and consummation of the plan. 11 U.S.C. § 1202(b) (trustee duties). *See also In re Case,* 11 B.R. 843, 847 (Bankr.D. Utah 1981). Moreover, this Court's decision in *Hines* suggests there must be some limitations in that no capable Trustee is going to work without adequate compensation. *See* 7 B.R. at 415. This, however, must be balanced against the "farmer-debtors'" rights under the Code, Congress's clear intent to offer them a meaningful opportunity to reorganize,[18] and recognition that long-term debt repayment is at issue (debtors' homestead). In the instant case, the Court is also mindful that the debtors have proposed to make payments each year totaling approximately $16,000 through the Trustee and subject to a fee; and the Trustee, in turn, will make periodic payments to one priority creditor, four

---

**17.** With respect to a debtor's principal residence in a Chapter 13, a debtor is required to cure any mortgage arrearages and make payments according to the terms of the mortgage and note (repayment is based on a Bankruptcy Code requirement and not on the value of the residence). 11 U.S.C. § 1322(b)(2). There is no similar requirement in Chapter 12. *See In re Erickson Partnership,* 68 B.R. 819, 823 n. 3

(Bankr. D.S.D. 1987), *aff'd,* 74 B.R. 670 (D.S.D. 1987).

**18.** *See In re Erickson Partnership,* 68 B.R. 819, 824 (Bankr. D.S.D. 1987), *aff'd,* 74 B.R. 670 (D.S.D. 1987), for discussion of Congressional intent for passage of Chapter 12.

creditors with secured claims, and payments to unsecured and undersecured creditors.

With respect to payment to First Federal, the Court finds that direct supervision is unnecessary and the lack of a fee assessment will not undermine the funding of the Chapter 12 Trustee's office. The debtors propose to pay First Federal according to the terms of its note and mortgage. The direct payments proposed to this creditor are $284.00 per month (note maturity date is 2001—fourteen years). As in *Hines*, the basis of this creditor's claim is a first mortgage on the debtors' homestead (40–acre parcel).

Likewise, the Court finds that payments made directly to Metropolitan neither require direct Trustee supervision nor undermine the funding of the Chapter 12 Trustee's office. The direct payments proposed to this creditor are semi-annual payments of $2,914.50 (for ten years). Metropolitan and the debtors have entered into a stipulation which, while agreeing to the "value" for repayment purposes, also clearly provides for procedures for self-monitoring of plan obligations and remedies for debtors' failure to meet their obligations. The payment schedule is established, the notices required in the event of a failure to make payments are set out, and the remedy for a failure to cure the default within the requisite period of time is specifically provided. If the debtors fail to cure a default within the requisite time, and after notice, Metropolitan may present an ex parte application to the Court for relief from the automatic stay and abandonment of the property by the debtors. Metropolitan also holds a first mortgage on the debtors' homestead (104–acre parcel which adjoins the 40–acre parcel).

In closing, the Court also notes that a decision affirming the ability of these debtors to make direct payments to both First Federal and Metropolitan without being subject to the Chapter 12 trustee's fee will also have the beneficial effect of encouraging post-filing workouts between other debtors and creditors. The bankruptcy process already suffers a heavy burden from the heavy caseload of matters pending in this district. This burden is imposed not only on the bankruptcy court, but also on those who must wait in the already long line at the courthouse. The bankruptcy process works much better when the parties are encouraged to resolve their differences.

Based on the foregoing, the Court holds that the Chapter 12 Trustee, pursuant to 28 U.S.C. § 586(e) or otherwise, may not assess a ten percent fee on direct payments made by the debtors to the creditors, First Federal and Metropolitan, under their plan of reorganization.

Accordingly, the above and foregoing hereby constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and Fed.R.Civ.P. 52. Counsel for the debtors is directed to submit an appropriate order in accordance with Bank. R.P. 9021.